**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Q+FOOD LLC, on behalf of itself and all others similarly situated,

Plaintiff,

v.

MITSUBISHI FUSO TRUCK OF AMERICA, INC.,

Defendant.

Civil Action No. 14-6046 (MAS) (DEA)

**OPINION**

**SHIPP, District Judge**

This matter comes before the Court on the two motions of Defendant Mitsubishi Fuso Truck of America, Inc. ("Mitsubishi" or "Defendant"). Defendant moves to dismiss Q+Food LLC's ("Q+Food" or "Plaintiff") putative class action complaint ("Complaint") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 21.) Defendant also moves to strike Plaintiff's class allegations pursuant to Rule 23(c)(1)(A) and (d)(1)(D) of the Federal Rules of Civil Procedure. (ECF No. 22.) Plaintiff opposed the motions (ECF Nos. 27, 28), and Defendant replied (ECF Nos. 29, 30). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendant's motion to dismiss is granted in part and denied in part, and Defendant's motion to strike the class allegations is denied as premature.

## I. Background

This is a putative class action alleging consumer fraud and breach of warranty. Specifically, Plaintiff alleges that the engines in Mitsubishi's 2012 FE125 truck, a diesel powered

medium duty truck, was defective, "causing the warranty to fail of its essential purpose and constituting a model-wide breach of contract." (Compl. ¶ 1, ECF No. 1.)

In the Complaint, Plaintiff alleges that Mitsubishi "designed, manufactured, sold for profit, and warranted the BlueTec® technology Engines" (the "Engine(s)") that contained an exhaust emission control system designed to reduce air pollutants and to comply with the United States Environmental Protection Agency's ("EPA") 2010 Emission Standard ("2010 Standard"). (*Id.* ¶ 12.) Mitsubishi issued a press release in October 2009 announcing that "its EPA 2010-emissions compliant commercial trucks will use engines equipped with BlueTec® technology developed by Mitsubishi" and that Mitsubishi "know[s] exactly how the technology functions over time, and [it is] confident it will provide [its] trucks with unparalleled operational stability and reliability." (*Id.* ¶¶ 2, 27, 30-31.) Mitsubishi installed the Engines on all of its 2012 FE125 trucks. (*Id.* ¶¶ 1, 3.) Specifically, the Engines used the Electronic Control Unit ("ECU") software, which monitored and ensured that the exhaust was of a sufficiently reduced pollutant level to meet the 2010 Standard. (*Id.* ¶ 33.) If there was a problem with the operating conditions of the Engine, the ECU was programmed to provide one of the following levels of response: (1) warning; (2) de-rate; or (3) shutdown. (*Id.* ¶ 34.) "Warning" advises that driver action needs to be taken or the Engine will begin to shut down; "de-rate" reduces the horsepower in order to avoid damage; and "shutdown" begins to shut down the Engine within a short period of time. (*Id.*) Any of these commands requires immediate authorized maintenance. (*Id.*)

Plaintiff alleges that Mitsubishi's representations about the Engines were wrong and the technology rendered the trucks defective and caused operational failures that resulted in the Engines unexpectedly shutting down for no apparent reason. (*Id.* ¶¶ 3, 5, 29.) Specifically, Plaintiff alleges that the Engines repeatedly and frequently experienced warning, de-rate, and

shutdown commands that resulted in required immediate authorized maintenance, during which time the trucks were out of service. (*Id.* ¶ 43.) Plaintiff claims that the BlueTec® technology was defective and did not function efficiently or reliably. (*Id.* ¶ 35.)

As alleged, Mitsubishi provided a warranty package that included three-year bumper-to-bumper, four-year rust-through, five-year/175,000-mile powertrain, and five-year emission control system warranties. (*Id.* ¶¶ 46-48.) The five-year emission control system warranty ("Emission Control Warranty") "covers the 'BlueTec® Emission Control System' and components for the first 60 months, and promises that 'any genuine Mitsubishi Fuso parts covered by the [Mitsubishi] emissions warranty that prove defective in material or workmanship will be repaired or replaced by any Authorized Dealer, using genuine Mitsubishi Fuso replacement parts, at no charge for parts and labor.'" (*Id.* ¶ 48.)

On July 22, 2011, Plaintiff, a Florida limited liability company, purchased a new 2012 FE125 truck (the "Truck"), equipped with an Engine, from Mitsubishi's authorized dealer, Tri-County Truck & Equipment in Pompano Beach, Florida. (*Id.* ¶ 64.) On thirteen different occasions over the first three years of ownership of the Truck, Plaintiff allegedly had to bring the truck in for service to an authorized dealer. (*Id.* ¶¶ 65-77.) On one occasion, the authorized dealer "could not diagnose the problem." (*Id.* ¶ 76.) Plaintiff alleges that the Truck was "out-of-service for at least 250 days of the 790 days in which Plaintiff owned the [T]ruck." (*Id.* ¶ 4.)

In July 2014, following Q+Food's repeated notices and complaints regarding the condition of the Truck, Plaintiff received an e-mail message from Mitsubishi's Product Support Manager stating Mitsubishi has "come to the determination that no further assistance will be provided at this time." (*Id.* ¶¶ 79, 80.) In response, Plaintiff filed this putative class action alleging the warranty failed of its essential purpose. In the Complaint, Plaintiff alleges: (1) violations of New

Jersey's Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1-80, or Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. §§ 501.201-13; (2) breach of express warranty; (3) breach of the implied warranty of merchantability; (4) breach of implied covenant of good faith and fair dealing; and (5) declaratory relief pursuant to 28 U.S.C. § 2201(a).

## II. Legal Standard

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). On a

motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Rule 9(b), in addition, imposes a heightened pleading standard for claims of fraud. Fed. R. Civ. P. 9(b). To pass muster under Rule 9(b), a plaintiff must specify "the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (internal quotation marks omitted). To meet this requirement, the plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). At a minimum, a plaintiff must support allegations of fraud with the "who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, L.T.D.*, 551 U.S. 308, 322-23 (2007).

## III. Analysis: Motion to Dismiss

### A. Choice of Law

Before the Court can conduct an analysis of Plaintiff's claims, it must determine the state law applicable to each claim.[1] To decide what substantive law should apply, a federal court sitting in diversity must apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New Jersey has implemented the "most significant

[1] Plaintiff's assertion that this decision is premature is not persuasive. The Third Circuit has held a district court may make a choice-of-law determination at the motion to dismiss stage. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 n.5 (3d Cir. 2010).

relationship" test. *Maniscalco v. Brother Int'l Corp.*, 709 F.3d 202, 210 (3d Cir. 2013) (*citing P.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008)). The test is partitioned into two parts. A court must determine: (1) "whether an actual conflict of law exists" and, if so, (2) "which state has the 'most significant relationship' to the claim by 'weighing the factors set forth in the Restatement [(Second) of Conflict of Laws]'" ("Restatement") that corresponds with plaintiff's cause of action.[2] *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 699 (D.N.J. 2011).

With respect to Count I, the NJCFA and FDUTPA have actual, discernable conflicts between them. The most compelling conflict between the two statutes concerns the remedies provided under each statute. The NJCFA allows an award of treble damages[3]; the FDUTPA contains no equivalent provision. N.J.S.A. 56:8-19. The inconsistent remedies in the two statutes creates an actual conflict of law. Concerning Count II, there is an actual conflict of law between the laws of New Jersey and Florida for breach of express warranty claims. Most notably, the

---

[2] "Where a fraud or misrepresentation claim has been alleged, the court looks to the factors set forth in [Section] 148 of the Restatement." *Maniscalco*, 709 F.3d at 207. Under section 148(2), those factors are: "(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." *Id.*

Similarly, "claims sounding in contract are governed Section 188 of the Restatement." *Feldman v. Mercedes-Benz USA, LLC*, No. 11-00984, 2012 WL 6596830, at *7 (D.N.J. Dec. 18, 2012). "Section 188 of the Restatement requires courts to consider: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at *8 (internal quotation marks omitted).

[3] Under the NJCFA, if a jury or a court determines that a party has committed an act of consumer fraud, then the court will "award threefold the damages sustained by any person in interest." N.J.S.A. 56:8-19.

Florida statute requires a plaintiff to provide a defendant with notice of a breach of warranty claim. Fla. Stat. Ann. § 672.607(3)(a).[4] Conversely, the New Jersey statute requires no such notice. N.J.S.A. 12A:2-313. The difference in notice requirements for the respective state statutes creates an actual conflict of law. In regards to Count III, breach of the implied warranty of merchantability, an actual conflict of law exists between New Jersey and Florida law. Florida's law requires privity between a plaintiff and a defendant in order for a plaintiff to adequately state a claim. *Ocana v. Ford Co.*, 992 So. 2d 319, 325 (Fla. Dist. Ct. App. 2008). Conversely, New Jersey law contains no such requirement. Because there is a difference in privity requirements, an actual conflict of law exists.

Given that there are discernable conflicts of law for Counts I, II, and III, it is necessary to determine which state has the most significant relationship to Plaintiff's claims. Under both the factors set forth in section 148 of the Restatement and those set forth in section 188, Florida has the most significant relationship to Plaintiff's claims. The sale of the Truck and the later maintenance work took place in Florida, and Plaintiff is a Florida company wholly-owned by two Florida residents. The only connection to New Jersey is the location of Defendant's headquarters from which the alleged deception emanated. The types of claims alleged by Plaintiff should be governed by the law of the consumer's home state, and here, Defendant's presence in New Jersey does not warrant a finding that New Jersey has the most significant relationship to these claims. Accordingly, since there are actual conflicts of law and Florida has the most significant

---

[4] "Where a tender has been accepted, the buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. Ann. § 672.607(3)(a).

relationship to Plaintiff's claims, Florida law applies to Counts I, II, and III of Plaintiff's Complaint.

**B. Count I: Violation of the FDUTPA**

Defendant argues Plaintiff's FDUTPA claim should be dismissed because it is not plead with particularity, the press release constitutes puffery, Plaintiff does not allege seeing the press release, and Plaintiff does not allege actual damages. (Def.'s Moving Br. 12-16, ECF No. 21-1.) In response, Plaintiff argues it has alleged sufficient facts to state a claim, simply: "[Mitsubishi] marketed the so-called 'Blue Tec® Engines' as a better alternative to the systems installed by other truck engine manufacturers for complying with new EPA regulations (Compl. ¶ 28) and those representations concerning the engines were false." (Pl.'s Opp'n Br. 8, ECF No. 28.)

To establish a claim under the FDUTPA, a plaintiff must plead: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages. *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)). A "deceptive or unfair practice" is established when a representation, omission, or practice that is likely to mislead a consumer is present, and it is material enough to affect the conduct of a decision. *Rollins, Inc.*, 951 So. 2d at 878. No actual reliance, however, is required. *Id.*

Here, accepting all factual allegations as true and construing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately alleged a deceptive or unfair practice with sufficient particularity to satisfy both Rules 8 and 9. Additionally, the statements alleged in Plaintiff's Complaint go beyond what normally constitutes puffery, and make specific representations. (*See* Compl. ¶¶ 27-30.) Also, under Florida law, no actual reliance by Plaintiff is required. Lastly, there is support under Florida law that the FDUTPA contemplates compensation for diminished value of a vehicle. *Compare Collins v. DaimlerChrysler Corp.*, 894

So. 2d 988, 990 (Fla. Dist. Ct. App. 2004), *with Rollins, Inc. v. Butland*, 951 So. 2d 860, 869-70 (Fla. Dist. Ct. App. 2006). Therefore, at the motion to dismiss stage Plaintiff has adequately stated a claim under the FDUTPA, and Defendant's motion to dismiss as to Count I is denied.

**C. Count II: Breach of Express Warranty**

Defendant argues that Plaintiff's breach of express warranty claim fails because Plaintiff failed to provide pre-suit notice and Defendant complied with the terms of the warranty. (Def.'s Moving Br. 17-22.) In response, Plaintiff argues that it adequately plead notice. Specifically, Plaintiff asserts that it provided sufficient notice by alleging it brought the Truck into an authorized dealer for service and through its allegations regarding the e-mail message response from Mitsubishi. (Pl.'s Opp'n Br. 16.) Additionally, Plaintiff argues that it sufficiently stated a claim that the warranty failed of its essential purpose. (*Id.* at 12-16.)

Pursuant to Florida law, "there can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms." *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. Dist. Ct. App. 2008); *see* Fla. Stat. Ann. § 672.313. In order to successfully assert a claim for breach of express warranty under Florida law, a plaintiff must plead: "(1) facts in respect to the sale of the goods; (2) type of warranty created; (3) facts in respect to the creation of that particular type of warranty; (4) facts of the breach of warranty; (5) notice to seller of breach; and (6) injuries sustained by the buyer as a result of the breach of warranty." *Pegasus Imaging Corp. v. Allscripts Healthcare Solutions, Inc.*, No. 08-1770, 2009 WL 1767612, at *2 (M.D. Fla. June 23, 2009). Under Florida law, "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. Ann. § 672.607(3)(a). Additionally, under Florida law, "where circumstances cause an exclusive

or limited remedy to fail of its essential purpose, remedy may be had as provided in the code." Fla. Stat. Ann. § 672.719. Warranties fail of their essential purpose if a problem is such that a manufacturer cannot repair it despite repeated attempts. *E.g., Parsons v. Motor Homes of Am., Inc.*, 465 So. 2d 1285, 1292 (Fla. Dist. Ct. App. 1985).

Here, in the Complaint, Plaintiff alleges it brought the Truck to an authorized dealer each time it needed service, and in July 2014, following Q+Food's repeated notices and complaints regarding the condition of the Truck, Plaintiff received an e-mail message from Mitsubishi's Product Support Manager stating Mitsubishi has "come to the determination that no further assistance will be provided at this time." (Compl. ¶¶ 79, 80.) Defendant does not assert how these allegations do not satisfy Plaintiff's burden at the motion to dismiss stage to plead proper notice. Additionally, Plaintiff pleads that on at least thirteen different occasions it had to bring the Truck in for service, and on at least one occasion the authorized dealer could not diagnose the problem. Construing these allegations in the light most favorable to Plaintiff, they are sufficient to show that Plaintiff has a plausible claim for relief. Therefore, Defendant's motion to dismiss as to Count II is denied.

### D. Count III: Breach of Implied Warranty of Merchantability

Defendant argues that Plaintiff's breach of the implied warranty of merchantability claim fails because there is no privity between the parties and Defendant disclaimed such a warranty. (Def.'s Moving Br. 22-24.) In response, Plaintiff argues (1) that the parties are in privity due to the written warranty and (2) that the disclaimer does not bar the claim because there are no allegations Plaintiff ever saw the disclaimer prior to purchase because it was not provided to Plaintiff until after the purchase of the Truck. (Pl.'s Opp'n Br. 18-24.)

Under Florida law, absent a conspicuous written disclaimer, merchants impliedly warrant that goods "are fit for the ordinary purposes of which such goods are used" by those with whom they are in privity. Fla. Stat. Ann. §§ 672.314(2)(c). Florida does not permit a plaintiff to recover economic losses for breach of an implied warranty of merchantability if privity cannot be established, regardless of whether the subsequent elements of the claim are fulfilled. *Brophy v. DaimlerChrysler Corp.*, 932 So.2d 272, 274 (Fla. Dist. Ct. App. 2005); *see also Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. Dist. Ct. App. 2008) (holding privity between the two parties is necessary to establish a claim for breach of implied warranty of merchantability).

In support of its argument on privity, Plaintiff relies upon *Cedars of Lebanon Hospital Corp. v. European X-Ray Distributors of America*, 444 So. 2d 1068 (Fla. Dist. Ct. App. 1984). In *Cedars of Lebanon*, the court allowed a warranty claim asserted by a hospital against the manufacturer of x-ray equipment even though the hospital purchased the equipment through a dealer, because the manufacturer's sales representative allegedly called the hospital and made representations regarding the quality of the equipment directly to the hospital. *Id.* Plaintiff's reliance on *Cedars of Lebanon* is misplaced; in the Complaint, Plaintiff does not allege any similar facts or representations by Mitsubishi directly to Plaintiff. Thus, Defendant's motion to dismiss as to Count III is granted.

### E. Count IV: Breach of the Implied Covenant of Good Faith and Fair Dealing[5]

As to Count IV, Defendant argues that because Plaintiff cannot state a claim for breach of warranty, it also cannot state a claim for breach of implied covenant of good faith and fair dealing. (Def.'s Moving Br. 25.) Additionally, Defendant argues that Plaintiff's implied covenant claim

---

[5] As neither party engaged in a choice-of-law analysis for Count IV, the Court declines to do so as well since this Court's analysis as to Count IV does not change under either New Jersey or Florida law.

fails because it cannot be asserted to override the terms of the express warranty to obligate Mitsubishi to provide a defect-free truck. (*Id.* at 26.) In response, Plaintiff argues it properly plead a claim for breach of warranty so Defendant's argument fails. (Pl.'s Opp'n Br. 24.) Also, Plaintiff asserts that Defendant's argument misconstrues the Complaint, which alleges "when a company knowingly sells a truck with a defective Engine and cannot repair it, it has violated its warranty and duty of good faith." (*Id.* at 25.)

The Court agrees with Plaintiff. The Court denied Defendant's motion to dismiss as to the breach of warranty claim, and therefore, Defendant's first argument is not persuasive. In addition, Defendant's second argument misconstrues Plaintiff's Complaint. Count IV of Plaintiff's Complaint alleges Defendant breach the implied covenant of good faith and fair dealing, not solely because the Truck had defects, but because Mitsubishi "knew, or should have known" the warranty was unconscionable and Mitsubishi failed to provide proper parts and services for the Engine. (Compl. ¶ 135.) At the motion to dismiss stage, Plaintiff has adequately plead a claim. Thus, Defendant's motion to dismiss as to Count IV is denied.

**F. Count V: Declaratory Judgment**

Defendant argues Plaintiff's declaratory judgment claim fails because it is duplicative of the relief required in Plaintiff's other claims. (Def.'s Moving Br. 27.) The Court agrees. A declaratory judgment cannot be granted when a plaintiff has not "identif[ied] a basis . . . whereby the Court must grant declaratory relief as a prerequisite for a finding of liability," and a court need not "issue a separate declaratory judgment on the merits of the action." *Maniscalco*, 627 F. Supp. 2d at 505. Since the relief sought in Count V is duplicative of the relief sought in the previous counts, Defendant's motion to dismiss Count V is granted, and Count V is dismissed.

## IV. Analysis: Motion to Strike

Defendant also moves to strike the class allegations in Plaintiff's Complaint. (ECF No. 22.) Specifically, Defendant argues that Plaintiff's proposed nationwide class should not be certified because it is overbroad and individualized fact issues destroy predominance. As Defendant's own argument demonstrates, to strike the class allegations at this stage would be premature, and the Court's consideration of this issue is better suited for the class certification stage.

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also In re Paulsboro Derailment Cases*, No. 12-7586, 2014 WL 1371712, at *2 (D.N.J. Apr. 8, 2014) ("A motion to strike class allegations implicates Federal Rules of Civil Procedure 12(f) and 23(c)(1)(a). . . . A further procedural vehicle is provided by Federal Rule of Civil Procedure Rule 23(d) (1)(D), which provides that a 'court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.'"). However, motions to strike are generally disfavored in this circuit at the motion to dismiss stage, and the Third Circuit has acknowledged that there are "rare few [cases] where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landman & Funk PC v. Skinder-Strauss Assoc.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011). "Similarly, numerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature." *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 707 (D.N.J. 2013) (citing *Ehrhart v. Synthes*, No. 07-1237, 2007 WL 4591276, at *3 (D.N.J. Dec. 28, 2007); *Andrews v. Home Depot U.S.A., Inc.*,

No. 03-5200, 2005 WL 1490474, at *3 (D.N.J. June 23, 2005); *Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, at *9 (D.N.J. Dec. 20, 2006)).

Given the early state of the proceedings, the Court denies Defendant's motion to strike the class allegations as premature.

## V. Conclusion

For the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part, and Defendant's motion to strike the class allegations is denied as premature. An order consistent with this Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** July 30, 2015