James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN,
  MILLER & SHAH, LLP
457 While Horse Pike
Collingswood, NJ 08107
(856) 858-1770
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Q+ FOOD, LLC; LAWRENCE BARTON d/b/a LEGEND MEATS, LLC; ENCORE PIANO & ORGAN MOVING, LLC; ALL AMERICAN MOVING AND STORAGE DELIVERY, LLC; and WEST LUMBER & BUILDING SUPPLY CORP; individually and on behalf of all others similarly situated, <br><br>             Plaintiffs, <br><br>     v. <br><br> MITSUBISHI FUSO TRUCK OF AMERICA, INC., <br><br>             Defendant. | Civ. No. 14-cv-06046-DEA <br><br> *Document electronically filed.* |

---

**PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION
FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF
SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

---

## **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ iii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 4

      A.      Plaintiffs' Allegations ............................................................................. 4

      B.      History of the Litigation ......................................................................... 5

      C.      The Proposed Settlement ....................................................................... 6

            1.      Monetary Relief ........................................................................ 7

            2.      Dismissal With Prejudice and Release of Claims .................... 9

            3.      Notice ........................................................................................ 9

LEGAL ARGUMENT ........................................................................................................... 11

I.      THE PROPOSED SETTLEMENT CLASS SATISFIES THE
        REQUIREMENTS OF RULE 23 ............................................................ 11

      A.      The Settlement Class Is Sufficiently Numerous ................................ 12

      B.      There Are Common Questions of Law and Fact ................................. 12

      C.      The Representative Plaintiffs' Claims Are Typical ............................ 14

      D.      The Representative Plaintiffs Have Fairly and Adequately
            Protected the Interests of the Settlement Class ................................... 14

      E.      The Proposed Class Satisfies the Predominance and Superiority
            Requirements ........................................................................................ 15

II.     THE SETTLEMENT SATISFIES THE CRITERIA FOR
        PRELIMINARY APPROVAL ................................................................ 17

III.    THIS COURT SHOULD APPOINT PLAINTIFFS'
        COUNSEL AS LEAD CLASS COUNSEL .......................................... 23

IV.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE............................................23

        A.      The Proposed Methods for Providing Notice Meet the Requirements
                for Approval...................................................................................................................24

        B.      The Proposed Content of the Notice Meets the Requirements for
                Approval .........................................................................................................................24

CONCLUSION.................................................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)........................................................................................................11

*Beck v. Maximus, Inc.,*
  457 F.3d 291 (3d Cir. 2006)............................................................................................14

*Bernhard v. TD Bank, N.A.,*
  2009 WL 3233541 (D.N.J. Oct. 5, 2009).......................................................................30

*Binker v. Com. of Pa.,*
  977 F.2d 738 (3d Cir. 1992)............................................................................................21

*Bredbenner v. Liberty Travel, Inc.,*
  2011 WL 1344745 (D.N.J. Apr. 8, 2011) .......................................................................20

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977), *aff'd*, 148 F.3d 283 (3d. Cir. 1998),
  *cert. denied*, 525 U.S. 1114 (1999).................................................................................21

*Daffin v. Ford Motor Co.,*
  458 F.3d 549 (6th Cir. 2006) ...........................................................................................13

*E.E.O.C. v. Com. of Pa.,*
  772 F. Supp. 217 (M.D. Pa. 1991)...................................................................................21

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975).............................................................................................18

*Grunewald v. Kasperbauer,*
  235 F.R.D. 599 (E.D. Pa. 2006).......................................................................................24

*Hanlon v. Palace Entm't Holdings, LLC,*
  2012 WL 27461 (W.D. Pa. Jan. 3, 2012).........................................................................17

*Henderson v. Volvo Cars of N. Am., LLC,*
  2013 WL 1192479 (D.N.J. Mar. 22, 2013).......................................................................21

*In re Aetna UCR Litigation,*
  2013 WL 4697994 (D.N.J. Aug. 30, 2013) ...........................................................17, 18, 20

*In re Cigna Corp. Secs. Litig.,*
  2007 WL 2071898 (E.D. Pa. July 13, 2007)....................................................................20

*In re Community Bank of Northern Virginia*,
   418 F.3d 277 (3d Cir. 2005) ........................................................................... 11

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ....................................................................... 17, 19

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012) ................................................................. 22

*In re Mercedes-Benz Tele Aid Contract Litigation*,
   257 F.R.D. 46 (D.N.J. 2009) .......................................................................... 13

*In re Merck & Co., Inc. Vytorin ERISA Litigation*,
   2010 WL 547613 (D.N.J. Feb. 9, 2010) ......................................................... 19

*In re Prudential Ins. Co. of Am. Sales Practices Litig,*,
   962 F. Supp. 450 (D.N.J. 1997) ..................................................................... 21

*In re Prudential Insurance Co. of America Sales Practices Litigation*,
   148 F.3d 283 (3d Cir. 1998) ........................................................... 16, 19, 24, 26

*In re Sch. Asbestos Litig.*,
   921 F.2d 1330 (3d Cir. 1990) ........................................................................ 17

*In re Schering-Plough/Merck Merger Litigation*,
   2010 WL 1257722 (D.N.J. March 26, 2012) ................................................... 22

*In re Warfarin Sodium Antitrust Litigation*,
   391 F.3d 516 (3d Cir. 2004) ............................................................ 12, 14, 17, 22

*In re Zurn Pex Plumbing Products Liability Litigation*,
   644 F.3d 604 (8th Cir. 2011) ......................................................................... 13

*Jones v. Commerce Bancorp, Inc.*,
   2007 WL 2085357 (D.N.J. July 16, 2007) ...................................................... 14

*Meijer, Inc. v. 3M*,
   2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) .................................................. 25

*Neale v. Volvo Cars of N. Am., LLC*,
   2013 WL 1223354 (D.N.J. Mar. 26, 2013) ................................................. 12, 13

*O'Brien v. Brain Research Labs, LLC*,
   2012 WL 3242365 (D.N.J. Aug. 9, 2012) ....................................................... 16

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ................................................................................ 21

*Singleton v. First Student Management LLC*,
2014 WL 3865853 (D.N.J. Aug. 6, 2014) ........................................................ 18, 20

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) .................................................................................. 12

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ............................................................................ 15, 16

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) .......................................................................... 12, 21

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) .............................................................................................. 17

*Wolin v. Jaguar Land Rover North America, LLC*,
617 F.3d 1168 (9th Cir. 2010) .............................................................................. 13

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
758 F.2d 86 (3d Cir. 1985) .................................................................................... 24

*Zinberg v. Wash. Bancorp, Inc.*,
138 F.R.D. 397 (D.N.J. 1990) ............................................................................... 12

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................... 11, 24

Fed. R. Civ. P. 23(a) ................................................................................. 11, 12, 17

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 17

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 14

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 14

Fed. R. Civ. P. 23(b) ............................................................................................ 17

Fed. R. Civ. P. 23(b)(3) ................................................................................... 11, 16

Fed. R. Civ. P. 23(c) ....................................................................................... 24, 25

Fed. R. Civ. P. 23(c)(1)(B) .................................................................................23

Fed. R. Civ. P. 23(c)(2) ................................................................................24, 25

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................26

Fed. R. Civ. P. 23(e) ...........................................................................11, 24, 25

Fed. R. Civ. P. 23(e)(1) .............................................................................24, 26

Fed. R. Civ. P. 23(g) .......................................................................................23

Fed. R. Civ. P. 23(g)(1)(A) ..............................................................................23

## **Other Authorities**

4 Newberg on Class Actions § 11:28 (4th ed. 2002) ..........................................15

Manual for Complex Litigation (Fourth), § 21.632 (2011) ...............................18

Moore's Federal Practice - Civil § 23.102[3][a]-[c] ..........................................26

## PRELIMINARY STATEMENT

Plaintiffs[1] seek preliminary approval of a class-wide settlement of claims of purchasers of model year 2012-2016 Mitsubishi-Fuso Canter trucks purchased or leased in the United States ("Subject Vehicle(s)" or "Vehicles(s)").  Plaintiffs allege that the Subject Vehicles, sold and warranted by Defendant, Mitsubishi-Fuso Truck of America, Inc. ("Defendant" or "MFTA"), were defective in that the emissions systems and the transmissions of the Subject Vehicles would fail under normal operating conditions.  Plaintiffs alleged that despite repeated efforts, MTFA-authorized technicians were unable to remedy the defective Subject Vehicles.

MFTA denies that the Subject Vehicles are defective or that it violated any laws, and disputes all of Plaintiffs' material allegations.  Significant litigation ensued after the Complaint was filed.  MFTA filed motions to dismiss and strike that were granted in part.  While many of Plaintiffs' claims survived under Florida law, which the Court applied following a choice of law analysis, there were numerous issues, all of which could potentially either avoid MFTA's liability or reduce available damages, that the Court found would be more appropriately decided at a later time.  In subsequent discussions about organizing the litigation, both sides recognized risks in continuing.  After multiple mediation sessions and arduous negotiations before a retired federal judge, the parties have reached a fair, reasonable, and adequate compromise.

The resultant, proposed settlement creates a $17.5 million, non-reversionary common fund ("Settlement Fund"), which will be utilized to pay all valid Class claims, all administration costs and all approved attorneys' fees and expenses and incentive awards.  The proposed Class

---

[1] Plaintiffs include Q+Food, LLC ("Q+Food"); Lawrence Barton d/b/a Legend Meats, LLC ("Legend Meats"); Encore Piano & Organ Moving, LLC ("Encore Piano"); All American Moving and Storage Delivery, LLC ("All American Moving"); and West Lumber & Building Supply Corp. ("West Lumber").

Action Settlement Agreement and Release ("Agreement" or "Settlement Agreement")[2] outlines separate tranches of relief which are available to Class Members depending upon, *inter alia*, the number of valid Qualifying Repairs[3] the particular Class Member experienced for each Subject Vehicle owned or leased.  By way of example, subject to *pro rata* adjustments, Class Members who experienced no Qualifying Repairs are eligible to receive $250 for each Subject Vehicle. Similarly, subject to *pro rata* adjustments, Class Members who experienced one to three Qualifying Repairs are eligible to receive $2,000 per Subject Vehicle; Class Members who experienced four to six Qualifying Repairs are eligible to receive $4,000 per Subject Vehicle; and Class Members who experienced seven or more Qualifying Repairs are eligible to receive $6,000 per Subject Vehicle.  Alternatively, Class Members may instead choose the optional prove-up category, under which they may submit proofs to the Claims Administrator documenting consequential losses they suffered up to a maximum of $10,000 as a result of Qualifying Repairs per Subject Vehicle.  Such losses include the cost of the Qualifying Repair itself, towing charges, rental charges, storage charges and hotel charges.

In addition, a Settlement Class Member who currently owns or leases a Subject Vehicle, which, as of the date of entry of the Preliminary Approval Order, has nine or more Qualified Repairs (regardless of ownership), a mileage of at least 110,000 miles <u>and</u> has not had emissions

---

[2] The Agreement is attached to the supporting Declaration of James C. Shah ("Shah Decl.") as Exhibit 1.  All capitalized and defined terms in the Agreement have the same meaning herein.

[3] "Qualifying Repair(s)" means a repair or replacement outside of the regular service intervals, performed on or before the date that the Preliminary Approval Order is entered, relating to emissions-related engine and after-treatment system issues, as well as transmission issues in the Subject Vehicles.  Repairs or replacements made due to a recall or service campaign shall not be considered a Qualifying Repair.  Multiple repairs or replacements relating to emissions-related engine and after-treatment system issues, as well as transmission issues in the Subject Vehicles during a single service visit, count as a single Qualifying Repair.

recall C1008400 performed, can request that it be bought back for fair market value.[4]  Fair market value of the cab and chassis will be determined based on the average wholesale Black Book value on the Effective Date.  Finally, if the buyback amount is accepted by the Settlement Class Member, that Settlement Class Member can also claim a purchase credit for the purchase of a new Mitsubishi-Fuso Canter truck.[5]

Plaintiffs believe that the proposed Settlement with Defendant is fair, reasonable, adequate, and is in the best interests of the members of the Settlement Class.  The Settlement resulted from protracted arm's-length negotiations by experienced counsel committed to the interests of their respective clients.  (Shah Decl. ¶¶ 3, 9, 20.)  If approved, the Settlement will provide significant benefits to members of the Settlement Class in exchange for dismissal of the claims against Defendant with prejudice.  Further, the proposed Settlement Class satisfies the requirements of Rule 23, and the law firms of Shepherd, Finkelman, Miller & Shah, LLP, Donovan Litigation Group, LLC, Murphy Law Firm, and Axler Goldich, LLC ("Class Counsel") are well qualified to serve as Lead Class Counsel as to the Settlement.

Class Counsel have retained Kurtzman Carson Consultants LLC ("KCC") as Settlement Administrator, and KCC has reviewed the types of data collected by Defendant pertaining to Class members, for use in disseminating the Class Notice.  (*See* Declaration of Carla A. Peak

---

[4] Before the filing of this lawsuit, emissions-related issues with the Subject Vehicles had been voluntarily reported to the EPA and CARB.  A voluntary emissions recall, No. C1008400, has been filed with the EPA and CARB since and is pending final approval.  The planned recall consists of hardware and software upgrades of the engine and after-treatment system.  Further, certain transmission-related issues have been dealt with via Service Bulletins and recalls in 2014.

[5] The purchase credit is being provided by MFTA separate and apart from the Settlement Fund and will not diminish the Settlement Fund in any way.  The purchase credit is valid for one year from the date of issuance.

("KCC Decl.") ¶¶ 6-9.)  Plaintiffs therefore propose a Notice program and forms of Notice as set forth below.

For the reasons set forth herein, this Settlement is fair, reasonable and adequate and should be preliminarily approved and notice disseminated to the Settlement Class.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      Plaintiffs' Allegations

In their Amended Complaint, Plaintiffs assert claims on behalf of themselves and all other similarly situated consumers against Defendant for breach of express and implied warranty under New Jersey, Florida, California, Ohio and Pennsylvania law; breach of the duty of good faith and fair dealing; violations of the New Jersey Consumer Fraud Act, the Florida Deceptive and Unfair Trade Practices Act, and the California Unfair Competition Law; and negligent design/engineering/manufacturing under Ohio law.

BlueTec® is an emissions control technology used in the Subject Vehicles that utilizes selective catalytic reduction to reduce nitrogen oxide emissions for clean, efficient operation.  As designed, adapted and installed on the Subject Vehicles, however, Plaintiffs allege that the Subject Vehicles are defective.  Among other things, Plaintiffs allege the technology has resulted in the repeated failure of the Diesel Exhaust Fluid ("DEF") handlers, the fuel injectors, the crank case pressure sensors and breather, the catalytic converter muffler, the DEF tank internal sensor, the engine protection system and the EEC programming, as well as a lack of power and numerous transmission problems that have caused the Subject Vehicles to stall or not restart.  Plaintiffs claim these alleged defects cost owners and lessees of the Subject Vehicles, through replacement vehicle costs, lost deliveries and work, and back-up trucking expenses.  MFTA

4

vigorously denies that the Subject Vehicles are defective or that it violated any laws, and disputes all of Plaintiffs' material allegations.

The Subject Vehicles come with several written warranties, including three-year (unlimited mileage) bumper-to-bumper, four-year (unlimited mileage) rust-through, five-year/175,000-mile powertrain, and a five-year (unlimited mileage) frame limited warranties. MFTA further provides a "5-Year Emission Control System" warranty that covers the "BlueTec® Emission Control System" and components for the first 60 months, and promises that "any genuine Mitsubishi Fuso parts covered by the MFTA emissions warranty that prove defective in material or workmanship will be repaired or replaced by any Authorized Dealer, using genuine Mitsubishi Fuso replacement parts, at no charge for parts and labor."  Plaintiffs assert that MFTA was obligated to repair or replace warrantable parts in the Subject Vehicles, but did not do so.  MFTA denies that it ever refused to repair any warrantable problem with the Subject Vehicles or that it violated its obligations under the warranties in any way.

**B.**    **History Of The Litigation**

This action was commenced by Q+Food on September 29, 2014. (ECF 1.)  Prior to initiating the action, Class Counsel spent considerable time investigating the issues, including the Subject Vehicle emission and transmission failures and repair issues, with Q+Food and a number of other potential Class Members, as well as investigating the scope of the problems with the Subject Vehicles.  In addition, Class Counsel researched the various laws potentially applicable to the claims, including Florida and New Jersey law.  Subsequent to the initiation of the action, Class Counsel spent considerable time investigating the claims of Plaintiffs Legend Meats, Encore Piano, All American Moving, and West Lumber and researching the various laws applicable to those claims, including, but not limited, to Ohio, California, New Jersey, and

Pennsylvania law.

Defendant filed a Motion to Dismiss the initial Complaint and Motion to Strike Class Allegations on December 8, 2014 (ECF 21, 22.)  The parties attended an Initial Conference on January 6, 2015 before this Court.  Following extensive briefing, the Court entered an Opinion on July 30, 2015 (ECF 31), denying the Motion to Strike Class Allegations and granting, in part, the Motion to Dismiss.  Thereafter, the parties commenced a dialogue to determine whether a framework could be developed to resolve the matter.  Ultimately, the parties agreed to utilize the services of the Honorable Edward A. Infante (Ret.), a well-respected neutral with JAMS.  The parties participated in four in-person mediation sessions with Judge Infante between November 2015 and June 2016.  Both during and after that time frame, the parties also engaged in telephonic negotiations with Judge Infante.  Ultimately, the parties' efforts resulted in the Settlement being presented to this Court for preliminary approval.

      **C.**    **The Proposed Settlement**

The Agreement follows the exchange of substantial information and is the product of extensive negotiations involving experienced counsel over the course of many months.  (Shah Decl. at ¶¶ 9-12, 20.)  The proposed Settlement resolves all claims against MFTA on behalf of a nationwide Class of all purchasers and lessees of the Subject Vehicles.   Specifically, the Settlement Class is defined as:

> All current and former owners and lessees of the Subject Vehicles, who purchased or leased them within the United States.

> Excluded from the Settlement Class are:

> a)      Persons who validly and timely exclude themselves using the procedure set forth in Paragraphs 7.3-7.4 [of the Agreement];

> b)      Persons who have settled with, released, or otherwise had claims adjudicated on

the merits against MFTA that are substantially similar to those alleged in this matter;

c)      Employees of MFTA;

d)      Insurers or other providers of extended service contracts or warranties for the Vehicles owned by Settlement Class Members; and

e)      The Hon. Douglas E. Arpert, and members of his family.

The Agreement provides for a release of Settlement Class Members' claims in exchange for a substantial cash payment.  The key components of the Agreement are discussed below.

### 1.      Monetary Relief

The proposed Settlement creates a $17.5 million, non-reversionary common fund which will be utilized to pay all valid Class claims, all administration costs and all approved attorneys' fees and expenses and incentive awards.  The Agreement outlines separate tranches of relief which are available to Class Members depending upon, *inter alia*, the number of valid Qualifying Repairs the particular Class Member experienced for each Subject Vehicle he, she or it owned or leased.

Class Members who experienced no Qualifying Repairs are eligible to receive $250 for each Subject Vehicle.   Similarly, subject to *pro rata* adjustments, Class Members who experienced one to three Qualifying Repairs are eligible to receive $2,000 per Subject Vehicle; Class Members who experienced four to six Qualifying Repairs are eligible to receive $4,000 per Subject Vehicle; and Class Members who experienced seven or more Qualifying Repairs are eligible to receive $6,000 per Subject Vehicle.   Alternatively, Class Members may instead choose the optional prove-up category, under which they may submit proofs to the Claims Administrator documenting consequential losses up to a maximum of $10,000 experienced by the Class Member as a consequence of Qualifying Repairs per Subject Vehicle.   Such losses

include the cost of the Qualifying Repair itself, towing charges, rental charges, storage charges and hotel charges. These amounts will be subject to *pro rata* adjustment upwards or downwards depending upon whether the total amount of claims is less than or exceeds the Net Settlement Fund after deduction of expenses. (Shah Decl., Ex. 1 at ¶ 4.7.)

In addition, a Settlement Class Member who currently owns or leases a Subject Vehicle which, as of the entry of the Preliminary Approval Order: (1) has had nine or more Qualified Repairs (regardless of ownership); (2) has a mileage of at least 110,000 miles; and (3) has not had emissions recall C1008400 performed, can request that it be bought back by Defendant for fair market value.[6] Fair market value of the cab and chassis will be determined based on the average wholesale Black Book value on the Effective Date. Upfitted body components (*e.g.*, refrigerator boxes) will be compensated at a flat rate of $1,500. Alternatively, the Settlement Class Member may elect to not turn in the upfitted body components and will be compensated actual costs, of up to $1,500, for the costs and labor associated with the removal or transfer of such upfitted body components from the Subject Vehicle to a different truck. Finally, if the buyback amount is accepted by the Settlement Class Member, that Settlement Class Member can also claim a purchase credit for $2,000, $3,000, or $5,000 dollars, depending on the Class of Vehicle to be purchased (Class 3, Class 4, or Class 5 trucks, respectively), for the purchase of a new Mitsubishi-Fuso Canter truck, which amount will be covered by Defendant separate and apart from the Settlement Fund. The non-transferrable purchase credit will be valid for one year from the date of issuance and may be combined with any other offer available to the general

---

[6] If a Settlement Class Member is leasing a Subject Vehicle that is otherwise eligible for the buyback, the Settlement Administrator will contact both the Settlement Class Member and lienholder to facilitate discussion about whether an agreement can be reached to terminate the lease. However the contribution from the Settlement Fund cannot exceed the amounts described in Paragraph 4.7 (C) of the Settlement Agreement, and Subject Vehicle must be turned in as per Paragraph 4.7 (C).

public.

Finally, in the event that there are multiple claimants on any aspect of a claim to a single Subject Vehicle (*e.g.*, who claim a given Qualified Repair), any dispute as to the allocation between such claimants shall be finally resolved by a Special Master selected by the parties and approved by the Court.

Subject to Court approval, Class Counsel will seek an award of attorneys' fees of up to 25% of the Settlement Fund, plus reasonable expenses not to exceed $100,000. Also subject to Court approval, Plaintiffs will seek service awards ranging from $15,000 to $30,000, in the aggregate amount of $90,000, to the five Class Representatives.[7]  (Shah Decl., Ex. 1 at ¶ 10.1.)

### 2.  Dismissal With Prejudice and Release of Claims

In exchange for these significant benefits to Settlement Class Members, the Agreement provides that all participating members in the Settlement Class will fully release Defendant from all federal and state law claims that could have been asserted in this Action relating, in any way, to the Subject Vehicles.  (Shah Decl., Ex. 1 at ¶¶ 1.22; 4.8-4.15.)  The releases do not, however, include claims against Defendant unrelated to the Released Claims, or include persons or entities that have previously executed settlement releases concerning the Subject Vehicles.  Such persons or entities that have previously executed settlement releases are specifically excluded from the Class.  (Shah Decl., Ex. 1 at ¶ 1.26(b).)[8]

### 3.  Notice

Notice consistent with the requirements of Rule 23 will be provided to the Settlement Class Members.  Through a competitive bidding process in which the parties solicited bids from

---

[7] Plaintiffs Q+Food, Legend Meats, Encore Piano, All American Moving, and West Lumber are the Class Representatives.

[8] The complete and controlling terms of the releases are set forth in the Agreement.  (Shah Decl., Ex. 1 at ¶ 12.)

different vendors, they have selected KCC as Settlement Administrator to facilitate issuance of Notice.  (*See* Shah Decl., ¶ 26.)

Plaintiffs propose that a Long Form Notice and Claim Form will be sent to Class Members by United States Postal Service ("USPS") first class mail.  MFTA will provide a list of applicable Vehicle Identification Numbers ("VINs") to the Settlement Administrator, which will obtain contact information of owners/lessees associated with each VIN from IHS Automotive, which contact information will be processed by the Settlement Administrator through the National Change of Address database (where a specific owner/lessee is known), the Coding Accuracy Support System and the Delivery Point Validation system for the purpose of verifying and updating the addresses.  Prior to mailing, the postal mailing addresses will be checked against the National Change of Address database maintained by the USPS, which contains records of all reported permanent moves for the past four years.  All addresses will be certified via the Coding Accuracy Support System to ensure the quality of the zip codes, and verified through the Delivery Point Validation to verify the accuracy of the addresses.  (KCC Decl. ¶¶ 7-11.)  The Claim Form and Long Form Notice are attached to the Agreement as Exhibits 1 and 2.[9] Notices returned as undeliverable will be re-mailed to any new address available through postal service information and, upon successfully locating better addresses, Notices will be promptly re-mailed.  Additionally, the Long Form Notice and Claim Form will be mailed to all persons who request one via the toll-free telephone number maintained by KCC.  (KCC Decl. ¶ 13.)

Further, there will be a neutral, informational, Settlement Website where Settlement Class Members can obtain additional information and documents, including the Agreement, Preliminary Approval Order, Amended Complaint, answers to frequently asked questions and

---

[9] The parties will also make available a claim form for us by Settlement Class Members with multiple engines.

any other information that the parties agree to provide or that the Court may require.  (KCC Decl. ¶ 12.)  Settlement Class Members will also be able to submit claims online.  Finally, a toll-free number will be established, and postal mailing address and email address will be provided, allowing Class Members to request additional information.  (KCC Decl. ¶¶ 12-13.)

## LEGAL ARGUMENT

## I.     THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23

This Court should preliminarily certify the proposed Settlement Class because it meets all applicable requirements of Federal Rule of Civil Procedure 23.  Certification of a settlement class is appropriate where the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – are satisfied.  *See* Fed. R. Civ. P. 23(e).  In addition, a settlement class must satisfy one of the three subsections of Rule 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.  But other specifications of the rule . . . demand undiluted . . . attention in the settlement context.").  In other words, the Court must be satisfied that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In analyzing Rule 23's elements, this Court "may take the terms of the proposed settlement into consideration.  The central inquiry . . . is the adequacy of representation."  *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3d Cir. 2005).  Further, in analyzing Rule 23's elements, this Court must analyze whether the representative parties "fairly and

adequately protect the interests of the class." *Varacallo v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 207, 234 (D.N.J. 2005).

### A.     The Settlement Class Is Sufficiently Numerous

The proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement. "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Here, MFTA sold approximately 10,000 Subject Vehicles.  (Shah Decl. ¶ 4.)  Thus, the numerosity requirement is easily satisfied.  *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990) (finding that numerosity is "clearly established" where there are potentially hundreds of class members)

### B.     There Are Common Questions Of Law And Fact

This is a settlement class, not a litigation class, so the proposed Settlement Class also satisfies Rule 23(a)'s commonality requirement for settlement purposes only.  "[A] finding of commonality does not require that all class members share identical claims." *In re Warfarin Sodium Antitrust Litigation,* 391 F.3d 516, 530 (3d Cir. 2004) (quotation marks omitted).  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227 (quotation marks and emphasis omitted).

Here, several common questions of fact and law exist that pertain to the central issue in this matter – whether the Subject Vehicles are defective and breach Defendant's express warranty.  Courts in this Circuit routinely hold that the commonality element is satisfied when plaintiffs assert that a defendant's vehicle contains a defective component. *See Neale v. Volvo*

*Cars of N. Am., LLC*, 2013 WL 1223354, at *9 (D.N.J. Mar. 26, 2013) (common questions sufficient to satisfy Rule 23(a)(2) "include whether the sunroof drainage systems in the Class Vehicles are defective, whether Defendants knew of the defect but failed to disclose it to the Class, and whether the maintenance instructions were inadequate and/or uniformly deficient."); *In re Mercedes-Benz Tele Aid Contract Litigation,* 257 F.R.D. 46, 69 (D.N.J. 2009) (defendant's conduct with respect to its alleged failure to disclose material facts regarding the Tele Aid service to vehicle owners render the claims amenable to common proof).[10]

Plaintiffs have asserted consumer fraud and straightforward breach of express and implied warranty claims, and, therefore, the common questions are, simply put, as follows: (1) whether the Subject Vehicles are defective; (2) whether MFTA's conduct constitutes a breach of its express warranty; (3) whether MFTA's conduct violated consumer fraud statutes; and (4) whether MFTA's conduct caused Plaintiffs and Class Members to be damaged.

Plaintiffs assert that the emissions systems and transmissions in the Subject Vehicles are materially identical and that the emissions system was manufactured to accomplish emission reduction "under all conditions" and in "all applications."  Plaintiffs also assert that emission system failures were diagnosed and "repaired" in the same way, using the same protocols and diagnostic tools, and that MFTA captured repair data.  Moreover, Plaintiffs allege that there is a

---

[10] *See also e.g. In re Zurn Pex Plumbing Products Liability Litigation*, 644 F.3d 604 (8th Cir. 2011) (determining "interpretation of *Zurn*'s warranty and its application to"… plaintiffs is a common question that lends itself to efficient class wide resolution under Rule 23"); *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (finding "[a]ppellants easily satisfy the commonality requirement.  The claims of all prospective class members involve the same alleged defect, [are] covered by the same warranty, and [are] found in vehicles of the same make and model); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (determining "question of whether the throttle body is defective is common to all 1999 or 2000 Villager owners because they all have the same throttle body and warranty").

single Operation and Maintenance Manual for all Subject Engines and Transmissions.  (*See* Shah

Decl. ¶ 5 .)  Thus, the proposed Settlement Class satisfies the commonality requirement.

### C.        The Representative Plaintiffs' Claims Are Typical

Rule 23(a)(3)'s "typicality requirement is designed to align the interests of the class and

the class representatives so that the latter will work to benefit the entire class through the pursuit

of their own goals."  *In re Warfarin Sodium*, 391 F.3d at 531 (quotation marks omitted).  "A

named Plaintiff's claims are typical where each class member's claims arise from the same

course of events and each class member makes similar legal arguments to prove the defendant's

liability."  *Jones v. Commerce Bancorp, Inc*., 2007 WL 2085357, at *3 (D.N.J. July 16, 2007).

Here, Plaintiffs' claims are typical of all other Class Members in that they experienced

common defects in the Subject Vehicles and were subject to the same warranties as all other

Class Members.  Plaintiffs assert the same legal claims on behalf of themselves and the proposed

Class; namely, that they sustained damages as a result of Defendant's common course of

conduct.  These similarities satisfy Rule 23(a) typicality requirements.

### D.        The Representative Plaintiffs Have Fairly And Adequately Protected The Interests Of The Settlement Class

The Representative Plaintiffs must "fairly and adequately protect the interests of the

class."  Fed.R.Civ.P. 23(a)(4).  The adequacy inquiry "assures that the named plaintiffs' claims

are not antagonistic to the class and that the attorneys for the class representatives are

experienced and qualified to prosecute the claims on behalf of the entire class."  *Beck v.*

*Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted).

Here, the Representative Plaintiffs and the Class they seek to represent share common

interests with respect to seeking compensation for the alleged defects with the Subject Vehicles.

By proving their own claims, Plaintiffs would necessarily help to prove the claims of their fellow

Class Members.  In addition, Plaintiffs have no interests that are antagonistic to the Class.  (Shah Decl. ¶ 6.)  Further, Class Counsel are experienced class action litigators familiar with the legal and factual issues involved and are each highly qualified.  (Shah Decl. ¶¶ 7-8, and Exhibits 2-5 thereto (resumes of each of the Class Counsel).)  Thus, the adequacy requirement is satisfied.

> ### E.    The Proposed Class Satisfies The Predominance And Superiority Requirements

The proposed Settlement Class also satisfies Rule 23(b)'s two requirements.  First, the common questions discussed above predominate over individual questions, and second, a class action is a superior to other methods of adjudicating the controversy.  *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc) (settlement class).

The focus on predominance in a settlement class is whether the defendant's conduct was common to all class members and whether all of the class members were harmed by the defendant's conduct.  *Sullivan*, 667 F.3d at 298.  That is precisely the case here.  The predominating questions include whether the Subject Vehicles have common defects in the emission and transmission systems, whether MFTA issued the same warranties on the Subject Vehicles to all Class Members, and whether Class Members were harmed by MFTA's conduct.

The existence of minor variations in state law relating to express warranty claims or consumer fraud claims does not defeat predominance, particularly since this is a settlement class.  Approval of class action settlements "is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled."  4 Newberg on Class Actions § 11:28 (4th ed. 2002); *see also, e.g.*, *Sullivan*, 667 F.3d at 298-99 (certifying a settlement class despite the fact that variances in state law would likely have defeated predominance if the class was being certified for trial).  Indeed, "'variations [in state laws] are irrelevant to certification of a settlement class' since a settlement would eliminate the principal

15

burden of establishing the elements of liability under disparate laws." 667 F.3d at 303 (quoting *In re Prudential Insurance Co. of America Sales Practices Litigation*, 148 F.3d 283, 315 (3d Cir. 1998)).

Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Class adjudication of Plaintiffs' claims here would be superior to individual trials, and joinder of all Class Members is impracticable. The class action mechanism is superior to its alternatives, particularly with respect to settlements, because it ensures that the claims of the absent class members will be resolved efficiently. *O'Brien v. Brain Research Labs, LLC*, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) (finding superiority because, *inter alia*, "denying certification would require each consumer to file suit individually at the expense of judicial economy").

Absent class certification, many members of the proposed Settlement Class here would go uncompensated because they would lack adequate monetary incentives to pursue their claims individually. *See* 2012 WL 3242365, at *9 (finding superiority because, *inter alia*, it was "not apparent that the money potentially recoverable by an individual class member as compared to the cost to pursue recovery through a lawsuit is sufficient to make individual litigation a realistic possibility"). The prosecution of separate actions by individual members of the proposed Class would impose heavy burdens on the courts and the parties, and would create a risk of inconsistent rulings, which further favors class treatment. Moreover, the interests of Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. Therefore, a class action is the superior method of adjudicating the claims raised in this case. For all these reasons, the Settlement Class meets all

applicable requirements of Rule 23(a) and (b).  The Court should, therefore, enter the Order certifying the Settlement Class.

## II.     THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

Plaintiffs respectfully request that this Court preliminarily approve the Agreement with Defendant, appoint Plaintiffs' Counsel as Class Counsel, and authorize the issuance of Notice of Settlement to Settlement Class Members.

Settlement spares litigants the uncertainty, delay and expense of a trial, and reduces the burden on judicial resources.  As a result, "[c]ompromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  This is "particularly [true] in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (the court "encourage[s] settlement of complex litigation that otherwise could linger for years").  The proposed Agreement here meets all the requirements for preliminary approval by this Court.

"Review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing."  *In re Aetna UCR Litigation*, 2013 WL 4697994, at *10 (D.N.J. Aug. 30, 2013).  This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  *See In re GMC*, 55 F.3d at 785; *Hanlon v. Palace Entm't Holdings, LLC*, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012) (explaining that at the preliminary approval phase, the "court must only 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms'" (quoting

17

Manual for Complex Litigation (Fourth), § 21.632 (2011))). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *In re Aetna UCR Litigation*, 2013 WL 4697994, at *10. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Id.*

While consideration of the requirements for final approval is unnecessary at this stage, it is important to consider the final approval factors at the preliminary approval stage in order to identify any issues that could impede final approval. *Singleton v. First Student Management LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014). Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). All of the relevant factors weigh in favor of the Settlement proposed here. The proposed Agreement is fair, adequate, and reasonable. Therefore, this Court should preliminarily approve the Settlement and certify the Settlement Class.

The first factor weighs in favor of approval of the Settlement. This litigation has been ongoing for almost two years. It involves complex factual and legal issues, under the laws of multiple states. Given the nature of the alleged defects, were the case to proceed to the class certification and trial stages, the parties would be required to engage in extensive expert and merits discovery. Simply put, absent the Settlement, the litigation would be vigorously litigated for at least several additional years. Moreover, there is a substantial likelihood of appeal from

18

any decision on Class certification, as well as an appeal of any final judgment. A certain result for Class Members now, rather than a potentially larger, but contingent one at some indefinite time years in the future, weighs in favor of approval of the Settlement.

It is premature, at this point, to weigh the second *Girsh* factor, the reaction of the Class to the Settlement, since it has not yet been presented to them. The third *Girsh* factor requires the Court to "consider the 'degree of case development that Class Counsel have accomplished prior to Settlement,' including the type and amount of discovery already undertaken." *In re Merck & Co., Inc. Vytorin ERISA Litigation,* 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)) "In short, under this factor the Court considers whether the of amount of discovery completed in the case has permitted 'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'" *Merck ERISA*, 2010 WL 547613, at *7 (alteration in original) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)). This factor weighs in favor of approval of the Settlement. Here, there has been an exchange of information on both sides, more than a sufficient amount for the parties to appreciate the merits of the case. The Agreement represents the culmination of extensive and intensive arm's-length negotiations over the course of many months. (Shah Decl. ¶¶ 9, 20.) Plaintiffs were represented in the Settlement negotiations by a team of attorneys who have had considerable experience in complex automotive and engine defect class actions, and who are therefore well-versed in the legal and factual issues. (*Id*. ¶ 10.) Defendant was similarly represented by counsel with extensive experience defending class actions and complex litigation matters. The Settlement negotiations were contested and conducted in the utmost of good faith.

(*Id.* ¶ 11.)  Through those extensive discussions, counsel for all parties were able to craft the Agreement given the allegations at issue in this case.

Further, the Settlement negotiations were conducted with the assistance of a well-respected mediator, Judge Infante.  The involvement of a mediator can assist counsel with assessing the relative strengths of their positions.  *See Aetna*, 2013 WL 4697994, at *11.  The participation of a mediator in this case is further assurance that the Settlement is the result of arm's-length negotiations.  *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.") (internal quotation marks omitted).  *See also Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) (finding that the standards for preliminary approval were met where the settlement was the product of "serious negotiation" between counsel and conducted pursuant to mediation by a retired judge); *In re Cigna Corp. Secs. Litig.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("[I]t is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who was privately retained and served as mediator.").

The fourth, fifth and sixth *Girsh* factors (risks of establishing liability, damages and maintaining the class action through trial) are appropriately considered together for purposes of preliminary approval.  *Singleton*, 2014 WL 3865853, at *6.  A reading of the Court's opinion deciding MFTA's motions to dismiss outlines some of the risks involved in establishing liability and damages.  While many of Plaintiffs' claims survived under Florida law, which the Court applied following a choice-of-law analysis, there were numerous issues, all of which could potentially either avoid MFTA's liability or reduce available damages, that the Court found

would be more appropriately decided on at a later time.  Those issues include giving notice under the UCC of the defects in the Vehicles (ECF 31, Op. at 9-10), and the scope of the warranties and breach thereof.  Those potential pitfalls are in addition to the risks associated with any certification motion, as well as the risk associated with going to trial and hoping that the jury will find Plaintiffs' case more persuasive than MFTA's case.  While Plaintiffs believe that they would ultimately prevail, they recognize the risks associated with complex litigation.

Counsel's judgment that the Settlement is fair and reasonable is entitled to considerable weight.  *See E.E.O.C. v. Com. of Pa.*, 772 F. Supp. 217, 219-20 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, *taken as a whole*, is fair, reasonable and adequate to all concerned."  (emphasis in original) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Varacallo.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,*, 962 F. Supp. 450, 543 (D.N.J. 1997) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is "entitled to rely upon the judgment of experienced counsel for the parties")), *aff'd*, 148 F.3d 283 (3d. Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999).

The seventh *Girsh* factor is neutral.  MFTA certainly has assets to pay more than a settlement of $17.5 million.  However, the fact that a defendant *can* pay more does not make an otherwise reasonable settlement unreasonable.  *See Henderson v. Volvo Cars of N. Am., LLC,* 2013 WL 1192479, at *11 (D.N.J. Mar. 22, 2013) ("Plaintiffs acknowledge that 'there is

currently no indication that Volvo here would be unable to withstand a more significant judgment,' but 'to withhold approval of a settlement of this size because it could withstand a greater judgment would make little sense where the [settlement agreement] is within the range of reasonableness and provides substantial benefits to the Class.'") (citing cases where settlement was approved despite defendants' ability to withstand a greater judgment); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484 (D.N.J. 2012) ("But even assuming there are sufficient funds to pay a greater judgment, the Third Circuit has found that a defendant's ability to pay a larger settlement sum is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement") (internal quotations and citations omitted).

The final two *Girsh* factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538.  As this Court has often explained, "according to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth factor)." *In re Schering-Plough/Merck Merger Litigation*, 2010 WL 1257722, at *12 (D.N.J. March 26, 2012).  Additionally, in conducting this evaluation, the Court should keep in mind "that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation."  *Johnson & Johnson*, 900 F.Supp.2d at 484-85 (alteration in original) (internal quotations and citations omitted).

In this case, the information exchange indicated that the potential recovery on behalf of the class, assuming the case went to trial and Plaintiffs were successful, could be higher than the Settlement amount.  But this is not surprising - it certainly could have been lower.  Put simply,

when weighed against the time, expense and potential risk of further litigation, as outlined above in the discussion of the other *Girsh* factors, the Settlement is a reasonable compromise in order to give Class Members a certain recovery now.

## III.   THIS COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS LEAD CLASS COUNSEL

Rule 23(c)(1)(B) states that an order certifying a class action "must appoint class counsel under Rule 23(g)."  The court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

James C. Shah and Natalie J. Finkelman Bennett of Shepherd, Finkelman, Miller & Shah, LLP; Michael D. Donovan of Donovan Litigation Group, LLC; Robert W. Murphy of the Murphy Law Firm; and Marc A. Goldich of Axler Goldich, LLC, have been cooperatively working together on this case as counsel for Plaintiffs.  The work done by these firms provides a substantial basis for a finding that they satisfy each applicable criterion under Rule 23(g), and are well qualified to serve as Lead Class Counsel.  (Shah Decl. ¶¶ 7-21.)  These firms have performed a great deal of work investigating the facts underlying this case, analyzed the documents and information produced, and have otherwise prepared the litigation for a putative class action; and they have negotiated and executed the Agreement.  (*Id.*)  Accordingly, Counsel should be appointed as Lead Class Counsel.

## IV.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE

The parties also seek this Court's approval of the Notice procedures set out in the Settlement and in full detail in the KCC Declaration.  Under the  proposed Notice plan, KCC will

send direct mail Notice to members of the Settlement Class. The manner in which notice is disseminated, as well as its content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process. *See Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90-91 (3d Cir. 1985); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006).

Rule 23(c)(2) provides that class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2). Similarly, Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]." Fed. R. Civ. P. 23(e)(1). "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy the due process requirements of the Fifth Amendment." *In re Prudential*, 148 F.3d at 306.

## A. The Proposed Methods For Providing Notice Meet The Requirements For Approval

The parties propose that the Settlement Administrator mail individual Notice to each Class Member. (KCC Decl. ¶¶ 6-11.) Further, the parties propose that the Settlement Administrator publish Notice[11] on a dedicated website. (KCC Decl. ¶ 12.) These proposed methods of providing notice fully satisfy Rule 23(c), Rule 23(e), and due process.

## B. The Proposed Content Of The Notice Meets The Requirements For Approval

The proposed content of the Notice also satisfies both Rule 23 and due process. To satisfy Rule 23(c)(2), the notice must state "in plain, easily understood language," information about "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims,

---

[11] A copy of the proposed Notice is attached to the Agreement as Exhibit 1, and multi-truck claim forms will be made available as well.

issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)." Fed. R. Civ. P. 23(c)(2).  In addition, Rule 23(e) and due process require that notice of a proposed settlement must inform class members about the settlement's general terms, that the class members can seek complete information from the court files, and that any class member may appear and be heard at a final approval hearing.  *See Meijer, Inc. v. 3M*, 2006 WL 2382718, at *10 (E.D. Pa. Aug. 14, 2006).  "Although the notice need not be unduly specific the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it."  *Id.* (internal quotation marks omitted).

The proposed Notice meets these requirements.  The proposed mail and website notice is written in plain English and describes: (1) the nature of the claims in the case; (2) a description of the Settlement Class; (3) a description of the Settlement and the relief to be provided; (4) the consequences of opting out or remaining in the Class; and (5) how to get more information from this Court about the Settlement, the parties involved and the procedures to follow to object or opt out. (KCC Decl. ¶ 12; Shah Decl. ¶¶ 28-29.)  The Notice will include the deadline to object to or opt out of the Settlement, and the date of the Final Approval Hearing.  (*Id.*; Shah Decl. ¶ 28.) The Notice states that Class Members can enter an appearance through counsel if desired. Finally, the Notice states how to get information about making a claim.[12]  Accordingly, the contents of the Notice meet all requirements and fully apprises Class Members about their

---

[12] To be eligible to receive a payment from the Settlement Fund, members of the Settlement Classes must submit a Claim Form postmarked no later than 90 days after the Final Approval Hearing.  (Shah Decl., Ex. 1 at ¶ 4.7.)

options. *See In re Prudential*, 148 F.3d at 328 (finding that notice provided the class members all of the required information about their rights and obligations under the settlement agreement).

Class Counsel propose a Notice plan that will maximize the opportunity for members of the Class to understand the nature of the Class, the Settlement, and to respond appropriately if they so choose. The costs of notice will be paid out of the Settlement Fund. Plaintiffs have endeavored to secure the most efficient Notice program possible, which can be done using the addresses of the owners and lessees of the Subject Vehicles. The Agreement provides that, no later than 30 days after the entry of the Preliminary Approval Order, the Notice program must be substantially complete. (Shah Decl., Ex. 1 at ¶ 6.6.) The Agreement also provides that, prior to the Effective Date, up to $100,000 of the Settlement Fund may be used to give Notice and for administration costs. (*Id*. at ¶ 1.28.) This is reasonable and Plaintiffs request that the Court approve use of Settlement Funds for this purpose.

Such Notice plans are commonly used in class actions like this one and constitute valid, due and sufficient notice to class members, and satisfy both Rule 23(c)(2)(B)'s "best notice practicable" standard and Rule 23(e)(1)'s "notice in a reasonable manner" standard. *See, e.g*., Moore's Federal Practice - Civil § 23.102[3][a]-[c]. The parties therefore respectfully move this Court to approve the proposed form and manner of notice to the Settlement Class.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask this Court to: (1) certify the proposed Settlement Class: (2) preliminarily approve the Agreement submitted herein; (3) appoint Plaintiffs' Counsel as Lead Class Counsel; and (4) approve the Notice to be issued to the Settlement Class and Notice plan related thereto.

Dated:  October 19, 2016    SHEPHERD, FINKELMAN, MILLER
           & SHAH, LLP


         *s/James C. Shah*
         James C. Shah
         Natalie Finkelman Bennett
         475 White Horse Pike
         Collingswood, NJ  08107
         Tel: (856) 858-1770
         Fax: (866) 300-7367
         E-mail: jshah@sfmslaw.com
            nfinkelman@sfmslaw.com

         Michael D. Donovan
         DONOVAN LITIGATION GROUP LLC
         1055 Westlakes Drive, Suite 155
         Berwyn, PA  19312
         Tel: (610) 647-6067
         Fax: (610) 647-7215
         E-mail:  mdonovan@donovanaxler.com

         Robert W. Murphy
         ROBERT W. MURPHY
         1212 S.E. 2nd Avenue
         Fort Lauderdale, FL  33316
         Tel: (954) 763-8660
         Fax: (954) 763-8607
         E-Mail:  rwmurphy@lawfirmmurphy.com

         Marc A. Goldich
         AXLER GOLDICH LLC
         One Liberty Place
         1650 Market Street, Suite 3600
         Philadelphia, PA 19103
         Tel: (267) 207-2920
         E-mail: mgoldich@axgolaw.com

         *Attorneys for Plaintiffs and the Class*