**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Q+ FOOD; LLC, LAWRENCE BARTON d/b/a LEGEND MEATS, LLC; ENCORE PIANO & ORGAN MOVING, LLC; ALL AMERICAN MOVING AND STORAGE DELIVERY, LLC, and WEST LUMBER & BUILDING SUPPLY CORP., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MITSUBISHI FUSO TRUCK OF AMERICA, INC., <br><br> Defendant. | Civ. No. 14-cv-06046-MAS-DEA <br><br> *Document electronically filed.* |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION**
**FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND**
**SERVICE AWARDS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .............................................. 3

        A.      Nature of the Case ....................................................................................... 3

        B.      Class Counsel Performed High-Quality Work for the Benefit
                of the Settlement Class ................................................................................ 4

        C.      History of Settlement Negotiations ............................................................. 5

        D.      Confirmatory Discovery .............................................................................. 6

        E.      The Settlement ............................................................................................. 7

        F.      Class Counsel's Fee Request ..................................................................... 10

III.    CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED ...................... 10

        A.      The Requested Fee Award Is Reasonable Under The Percentage
                Of The Fund Method And Consistent With Those In Common
                Fund Cases ................................................................................................. 13

                1.      The Size Of The Fund And Number Of Persons Benefitted,
                        Supports The Requested Award ..................................................... 15

                2.      The Reaction Of The Class To The Settlement .............................. 16

                3.      The Skill And Efficiency Of The Attorneys Involved Weighs
                        In Favor Of The Requested Award ................................................ 16

                4.      Without This Settlement, The Class Would Encounter
                        Time-Consuming, Lengthy Litigation ............................................ 18

                5.      Class Counsel Undertook The Risk of Non-Payment ................... 18

                6.      Class Counsel Devoted Significant Time to This Case ................. 19

                7.      The Fee Is Well Within the Standard Range for Fees Approved
                        in Common Fund Cases ................................................................. 21

        B.      The Lodestar Cross-Check Supports That The Requested Fees And
                Expenses Are Fair And Reasonable .......................................................... 22

C.    Class Counsel Should Be Reimbursed for Their Reasonably Incurred Litigation Expenses.................................................................................27

IV.    THE SERVICE AWARDS SHOULD BE APPROVED ........................................................27

CONCLUSION.................................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abrams v. Lightolier, Inc.*,
   50 F.3d 1204 (3d Cir. 1995)..................................................................................27

*Accord In re Cendant Corp. Derivative Action Litig.*,
   232 F. Supp. 2d 327 (D.N.J. 2002) ........................................................................24

*Bernhard v. TD Bank, N.A.*,
   2009 WL 3233541 (D.N.J. 2009)...........................................................................29

*Blackman v. O'Brien Envtl. Energy, Inc.*,
   1999 WL 397389 (E.D. Pa. May 2, 1999) .............................................................22

*Bodnar v. Bank of America N.A.*,
   No. 14-3224 (E.D.PA, Aug 4, 2016) ................................................................15, 26

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..........................................................................................10, 13

*Charles v. Goodyear Tire & Rubber Co.*,
   976 F. Supp. 321 (D.N.J. 1997) .............................................................................13

*Cohn v. Nelson*,
   375 F. Supp. 2d. 844 (E.D. Mo. 2005)....................................................................12

*Cosgrove v. Sullivan*,
   759 F. Supp. 166 (S.D.N.Y. 1991).........................................................................25

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000).................................................................21, 27, 29

*Dewey v. Volkswagen of America*,
   728 F. Supp. 2d 546 (D.N.J. 2010) .........................................................................23

*Feerer v. Amoco Prod. Co.*,
   1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998) ...................................25, 26

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)...........................................................................*passim*

*Hall v. AT&T Mobility LLC*,
   2010 WL 4053547 (D.N.J. Oct. 13, 2010)..............................................................21

*Hensley v Eckerhart*,
  461 U.S. 424 (1983) ...................................................................................................... 11

*In re Apple Computer, Inc. Deriv. Litig.*,
  2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ............................................................. 12

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002) ............................................................................... 16, 22

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ............................................................................... *passim*

*In re AXA Fin., Inc.*,
  2002 WL 1283674 (Del. Ch. May 22, 2002) .............................................................. 12

*In re Boston & Maine Corp.*,
  778 F.2d 890 (1st Cir. 1985) ....................................................................................... 26

*In re Buspirone Antitrust Litig.*,
  2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003 ............................................ 25

*In re Caterpillar, Inc., C13 and C15 Engine Products Liability Litigation*,
  MDL No. 2540 (D.N.J. September 20, 2016) ..............................................17, 21, 28, 29

*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001) ............................................................................... *passim*

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ....................................................................................... 23

*In re Computron Software, Inc.*,
  6 F. Supp. 2d 313 (D.N.J. 1998) ........................................................................... 14, 21

*In re Corel Corp. Inc. Sec. Litig.*,
  293 F. Supp. 2d. 484 (E.D. Pa. 2003) ........................................................................ 21

*In re Elec. Carbon Prod. AntiTrust Litig.*,
  447 F. Supp. 2d 389 (D.N.J. 2006) ......................................................... 10, 11, 14, 17

*In re EquiMed, Inc. Sec. Litig.*,
  2003 WL 735099 (E.D. Pa. Mar. 3, 2003) ........................................................... 21, 22

*In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*,
  1992 WL 226321 (C.D. Cal. June 10, 1992) .............................................................. 12

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ............................................................21

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ............................................................22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ..........................................................................13, 14

*In re Greenwich Pharm. Sec. Litig.*,
   1995 WL 251293 (E.D. Pa. Apr. 25, 1995) ..................................................22

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ......................................................11, 14, 17

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004) ..................................................29

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C.2002) ......................................................................29

*In re Merck & Co., Inc. Vytorin Erisa Litig,*
   2010 WL 547613 (D.N.J. Feb. 9, 2010) .......................................................25

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
   1994 WL 202394 (E.D. La. May 18, 1994) ..................................................19

*In re Prudential Ins. Co. of America. Sales Practice Litig. Agent Actions*,
   148 F.3d 340 (3rd Cir. 1998) ..................................................................22, 24

*In re Remeron End-Payor Antitrust Litig.*,
   2005 WL 2230314 (D.N.J. Sept. 13, 2005) ..................................................25

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ...........................................................21

*In re Residential Doors Antitrust Litig.*,
   1998 WL 151804, at *9 (E.D. Pa. Apr. 2, 1998) ..........................................29

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ..................................................................11, 14, 23

*In re RJR Nabisco Sec. Litig.*,
   1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ............................25

*In re Safety Components*, *Inc. Securities Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................................22, 27

*In re Triangle Indus. S'holder's Litig.*,
1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991) ........................................................25

*In re Tricor Direct Purchaser Antitrust Litig.*,
Civ. A. No. 05-340 (D. Del. Apr. 23, 2009) ........................................................................21

*In re Unisys Corp. Sec. Litig.*,
2001 WL 1563721 (E.D. Pa. Dec. 6, 2001) ........................................................................22

*In re ValueVision Int'l Inc. Sec. Litig.*,
957 F. Supp. 699 (E.D. Pa. 1997) ........................................................................22

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002) ........................................................................27

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................17, 19

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................12

*Johnson v. Georgia Hwy. Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) ........................................................................11

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass. 1987) ........................................................................11

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................26

*Matter of Cont'l Ill. Sec. Litig.*,
962 F.2d 566, 568-70 (7th Cir. 1992) ........................................................................12

*Mayer v. Driver Solutions, Inc.*,
2012 WL 3578856 (E.D. Pa. Aug. 17, 2012) ........................................................................29

*McCoy v. Health Net, Inc.*,
569 F. Supp. 2d 448 (D.N.J. 2008) ........................................................................25

*McGee v Continental Tire North America*,
2009 WL 539893 (E.D. Pa. Mar. 4, 2009) ........................................................................29

*Milliron v. T-Mobile USA, Inc.*,
   423 F. App'x. 131 (3d Cir. 2011) .................................................................................25

*Mirakay v. Dakota Growers Pasta Co.*,
   2014 WL 5358987 (D.N.J. Oct. 20, 2014) ....................................................................15

*Muchnick v. First Fed. Savings & Loan Ass'n*,
   1986 WL 10791 (E.D. Pa. Sept. 29, 1986) ...................................................................25

*O'Keefe v. Mercedes-Benz USA, LLC*,
   214 F.R.D. 266 (E.D. Pa. 2003) ...................................................................................23

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986) ......................................................................................................23

*Perera v. Chiron Corp.*,
   Civil No. 95-20725 (N.D. Cal. Feb. 17, 1999 and Feb. 29, 2000) ...............................25

*Ratner v. Bennett*,
   1996 WL 243645 (E.D. Pa. May 8, 1996) ...................................................................22

*Remeron Direct Purchaser Antitrust Litig.*,
   2005 WL 3008808 (D.N.J. Nov. 9, 2005) ...................................................................21

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ...............................................................................25

*Rowe v. E.I. DuPont de Nemours and Co.*,
   2011 WL 3837106 (D.N.J. Aug. 26, 2011) .................................................................24

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 941 (E.D. Tex. 2000) ...........................................................................17

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005) ......................................................................................25

*Weiss v. Mercedes-Benz of North America, Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995) .................................................................................25

*Willson v. N.Y. Life Ins. Co.*,
   1995 N.Y. Misc. LEXIS 652 (N. Y. Sup. Ct. Nov. 8, 1995) ........................................26

*Wilson v. Bank of Am. Nat'l Trust & Savs. Ass'n*,
   No. 643872 (Cal. Super. Ct. Aug. 16, 1992) ..............................................................26

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................10, 18

Fed. R. Civ. P. 26 .........................................................................................................................20

**Other Authorities**

Manual for Complex Litigation, § 24.121, at 207 ........................................................15, 26

William Rubenstein, Alba Conte, Herbert B. Newberg, NEWBERG ON CLASS ACTIONS,
   §14.06 at 550 (4th ed. 2002) ...............................................................................................15

1 Alba Conte, Attorney Fee Awards, §2.06 at 39 N. 90 (2d ed. 1993).........................15, 26

Class Representatives, Q+Food, LLC ("Q+Food"); Lawrence Barton d/b/a Legend

Meats, LLC ("Legend Meats");  Encore Piano & Organ Moving, LLC ("Encore Piano"), All

American Moving and Storage Delivery, LLC ("All American Delivery"); and West Lumber &

Building Supply Corp. ("West Lumber") ("Plaintiffs" or "Class Representatives"), by their

counsel, Shepherd, Finkelman, Miller & Shah, LLP; Donovan Litigation Group, LLC; Murphy

Law Firm, and Axler Goldich, LLC ("Class Counsel"), respectfully submits this Memorandum

of Law in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Reimbursement

of Expenses, and Service Awards.[1]

## I.    INTRODUCTION

Class Counsel achieved an extremely favorable, non-reversionary cash Settlement of

$17,500,000 for the benefit of the Settlement Class, which is defined as: All current and former

owners and lessees of the Subject Vehicles,[2] who purchased or leased them within the United

States.[3]  This excellent result was achieved after more than two years of zealous advocacy by

Class Counsel, and several months of hard-fought negotiation, including four full-day mediation

sessions with the Honorable Edward A. Infante (Ret.), a well-respected neutral with JAMS.

Class Counsel obtained favorable results on the initial motion to dismiss and motion to strike

filed by Defendant, Mitsubishi Fuso Truck of America, Inc. ("Defendant" or "MFTA") (together

---

[1] Plaintiffs will also file their memorandum in support of the settlement relief on March 13, 2017, as contemplated by the Preliminary Approval Order.

[2] "Subject Vehicles" are all model year 2012-2016 Mitsubishi-Fuso Canter trucks designed and manufactured for distribution in the United States of America and its territories.

[3] Excluded from the Settlement Class are: a) Persons who validly and timely exclude themselves using the procedure set forth in Paragraphs 7.3-7.4 [of the Settlement Agreement]; b) Persons who have settled with, released, or otherwise had claims adjudicated on the merits against MFTA that are substantially similar to those alleged in this matter; c) Employees of MFTA; d) Insurers or other providers of extended service contracts or warranties for the Vehicles owned by Settlement Class Members; and e) The Hon. Douglas E. Arpert, and members of his family.

with Plaintiffs, the "Parties"), and engaged in informal discovery to uncover important evidence supporting the Settlement Class's claims.  As a result of these efforts, Class Counsel were able to achieve a result that is very favorable to the Settlement Class.[4]  On October 26, 2016, this Court entered a Preliminary Approval Order finding that the terms of the Settlement are sufficiently fair, reasonable and adequate to allow dissemination of notice.  (ECF 56, ¶ 2.)[5]

As compensation for their efforts, Class Counsel seek an award of attorneys' fees of 25% of the Settlement Fund, or $4,375,000; expenses of $61,984.29; and service awards in the aggregate amount of $90,000 for the five Class Representatives in recognition of their significant efforts undertaken to assist Class Counsel and the Settlement Class.

The requested fee is eminently fair and reasonable, because it will compensate Class Counsel for that heavy investment of time, resources, and lost opportunity to work on other matters; because the fee is paid out of the common Settlement fund created solely by efforts of Class Counsel; because of the risks presented by this case, the quality and amount of work performed, and the stakes presented; and because the requested award is in line with other awards in this District and Circuit, which employs the percentage-of-the-fund method to determine attorneys' fee awards to class counsel in class action settlements involving a common fund. Should the Court perform an optional cross-check by examining Class Counsel's lodestar in this Action, the lodestar multiplier of 3.1 is reasonable and consistent with fee awards in the Third Circuit.

---

[4] The Settlement details are summarized in Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Settlement (ECF 50-1), the Declaration of James C. Shah in support thereof (ECF 50-2) and Exhibit 1 thereto (ECF 50-3) (Settlement Agreement)).

[5] By Stipulation dated October 28, 2016, the Final Approval Hearing was rescheduled to March 27, 2017 and the opt-out and objection deadline was moved to January 26, 2017.  (ECF 57.)

The requested fee amount was disclosed in the Court-approved Notice, which was sent directly to Class Members and also published on the Settlement website, beginning in November, 2016.  The Notice and website inform Class Members that Class Counsel will apply for fees not to exceed 25% of the total amount of the Settlement and reasonable expenses of up to $100,000.  (ECF 50-3 (Settlement Agreement) at Exhibit 1.)  The Notice and website also inform the Class that Class Plaintiffs will seek service awards in the aggregate amount of $90,000.  (*Id*.)

## II.      FACTUAL AND PROCEDURAL BACKGROUND

For several years, Class Counsel have zealously pursued the Litigation on behalf of the Settlement Class.  Class Counsel's litigation efforts are detailed in the Declaration of James C. Shah submitted herewith (the "Shah Decl.") and are briefly described below.

### A.      <u>Nature of the Case</u>

Plaintiffs' claims center on the allegations that the emissions-related engine and aftertreatment systems and transmissions in their Subject Vehicles were defective.  Defendant uses BlueTec®, an emissions control technology, in the Subject Vehicles.  BlueTec® utilizes selective catalytic reduction to reduce nitrogen oxide emissions for clean, efficient operation.  As designed, adapted and installed on the Subject Vehicles, however, Plaintiffs allege that BlueTec® and the emissions-related engine and aftertreatment systems are defective.  Among other things, it is alleged that the technology has resulted in the repeated failure of the Diesel Exhaust Fluid ("DEF") handlers, the fuel injectors, the crank case pressure sensors and breather, the catalytic converter muffler, the DEF tank internal sensor, the engine protection system and the EEC programming, as well as a lack of power.  Plaintiffs also allege the existence of numerous transmission problems that have caused the Subject Vehicles to stall or fail to restart.

The Subject Vehicles come with several written warranties, including three-year (unlimited mileage) bumper-to-bumper, and a "5-Year Emission Control System" warranty that covers the "BlueTec® Emission Control System" and components for the first 60 months. Plaintiffs assert that MFTA was obligated to repair or replace warrantable parts in the Subject Vehicles, but could not and did not effectively do so.

The Amended Complaint asserts that the alleged defects cost owners and lessees of the Subject Vehicles, through replacement vehicle costs, lost deliveries, lost work, storage costs and back-up trucking expenses.  In their Amended Complaint, Plaintiffs assert claims under the laws of New Jersey, Florida, California, Ohio and Pennsylvania for breach of express and implied warranty; breach of the duty of good faith and fair dealing; violations of state deceptive trade practices acts; and negligent design/engineering/manufacturing under Ohio law.

**B.**     **Class Counsel Performed High-Quality Work for the Benefit of the Settlement Class**

This action was commenced by Q+Food on September 29, 2014.  (ECF 1.)  Prior to initiating the action, Class Counsel spent considerable time investigating the issues, including the Subject Vehicle emission and transmission failures and repair issues, with Q+Food and a number of other potential Class Members, as well as investigating the scope of the problems with the Subject Vehicles.  No other firms or entities brought similar claims.  In addition, Class Counsel researched the various laws potentially applicable to the claims, including Florida and New Jersey law.

Defendant filed both a Motion to Dismiss the initial Complaint and Motion to Strike Class Allegations on December 8, 2014.  (ECF 21, 22.)  Q+Food filed responses (ECF 27, 28), and Defendant filed replies thereto.  (ECF 29, 30.)  The Parties met and conferred, and prepared and submitted a Proposed Joint Discovery Plan to the Court.  Thereafter, on January 5, 2015, the

Parties exchanged Initial Disclosures and attended an Initial Conference on January 6, 2015 before this Court.  Further, the Parties negotiated and entered into a Confidentiality Agreement. Following the extensive briefing on the motions filed by Defendant, the Court entered an Opinion on July 30, 2015 (ECF 31), denying the Motion to Strike Class Allegations and granting, in part, the Motion to Dismiss.  (Shah Decl. at ¶¶ 16-26.)

Class Counsel thereafter spent additional and considerable time investigating the claims of Plaintiffs, Legend Meats, Encore Piano, All American Moving, and West Lumber, and researching the various laws applicable to those claims, including, but not limited, to Ohio, California, New Jersey, and Pennsylvania law. (Shah Decl. at ¶¶ 20-21.)   Plaintiffs provided Defendant with a draft Amended Complaint, adding the claims of these additional Plaintiffs and thereafter filed the Amended Complaint.  (ECF 49.)

### C.   History of Settlement Negotiations

Following the denial of Defendant's motions in July, 2015 (ECF 31), the Parties commenced a dialogue to determine whether a framework could be developed to resolve the matter.  Ultimately, the Parties agreed to utilize the services of Judge Infante.  At that time, MFTA provided Plaintiffs confidential information regarding its sales of the Subject Vehicles, various service bulletins dealing with the emissions and transmissions issues, and warranty repair information.  The Parties participated in four in-person mediation sessions with Judge Infante between November 2015 and June 2016.  In connection with these mediation sessions, the Parties submitted detailed mediation briefs to Judge Infante, setting forth their respective views on the strengths of their cases, and during the mediation sessions, the Parties discussed their relative views of the law and the facts and potential relief for the proposed Class.  In between the in-person mediation sessions, the Parties exchanged additional information and engaged in

telephonic negotiations with Judge Infante.  Ultimately, the Parties' prolonged efforts resulted in the Settlement. (Shah Decl., ¶¶ 27-28, 34-35.)

The Settlement was achieved only after extensive analysis of the legal issues and issuance of the Court's Opinion on the motion to dismiss and strike the class allegations, the provision of information and warranty data that allowed Class Counsel to adequately evaluate the possibility of settlement, and only after the production and analysis of thousands of pages of documents and information.  In addition, Class Counsel had been conferring with engineering and economic experts during the course of prosecuting the Litigation. Thus, the Settlement was reached after considerable investigation and careful consideration and discussions.  As is evident from the procedural history, the negotiations, which ultimately resulted in the Settlement being presented to the Court, were adversarial, non-collusive, and conducted at arm's length.

### D.  <u>Confirmatory Discovery</u>

Throughout the Settlement negotiations, Class Counsel insisted that MFTA provide them with discovery that would permit them to ensure that any resolution was fair, adequate and reasonable.  This discovery included, *inter alia*, documents and data confirming the total number of Subject Vehicles, warranty repair data demonstrating the scope and magnitude of the repairs performed on the Subject Vehicles and the database of warranty repairs.  Class Counsel also requested and reviewed information about the recall involving the emissions systems (emissions recall C1008400), as well as the safety recalls and service actions on the transmission issues. Further, Plaintiffs interviewed a person most knowledgeable at MFTA about the warranty database, recalls and service actions and nature of the servicing of the Subject Vehicles.  (Shah Decl., ¶¶ 33-35.)

E.      **The Settlement**

As set forth in the Preliminary Approval filings and as will be fully discussed in Plaintiffs' brief in support of Final Approval of the Settlement (which will be filed in March 2017), the Settlement calls for the creation of a $17.5 million, non-reversionary common fund which will be utilized to pay all valid Class claims, administration costs, approved attorneys' fees and expenses, and service awards.  In short, without Class Counsel's persistence, hard work, and investment of resources, Class Members would have continued to have the same problems with the Subject Vehicles and continued to incur costs and loss of use of the Subject Vehicles. As a result of Class Counsel's work, however, the Settlement Class Members will enjoy the benefit of a real and immediate compensation for their damages, as well as an opportunity, in some cases, to have MFTA buy back the Subject vehicle from the damaged Class Member.

The Settlement Agreement follows the exchange of substantial information and is the product of extensive negotiations involving experienced counsel over the course of many months.  (Shah Decl., ¶¶ 27-35.)  The Agreement provides for a release of Settlement Class Members' claims in exchange for a substantial cash payment and outlines separate tranches of relief which are available to Class Members depending upon, *inter alia*, the number of valid Qualifying Repairs the particular Class Member experienced for each Subject Vehicle he, she or it owned or leased.  As defined in the Agreement, "Qualifying Repair" means [in-warranty and out-of-warranty] repair or replacement outside of the regular service intervals, performed on or before October 26, 2016, relating to emissions-related engine and after-treatment system issues, as well as transmission issues in the Subject Vehicles.[6]

---

[6] Repairs or replacements made due to a recall or service campaign are not considered a Qualifying Repair.  Multiple repairs or replacements relating to emissions-related engine and

Under the Settlement, Class Members who experienced no Qualifying Repairs are eligible to receive $250 for each Subject Vehicle.  Class Members who experienced one to three Qualifying Repairs are eligible to receive $2,000 per Subject Vehicle.  Similarly, Class Members who experienced four to six Qualifying Repairs are eligible to receive $4,000 per Subject Vehicle, and Class Members who experienced seven or more Qualifying Repairs are eligible to receive $6,000 per Subject Vehicle.[7]  (Shah Decl., ¶10.)

In addition to providing the substantial monetary relief based on Qualifying Repairs, the Settlement also provides Class Members with an optional prove-up category, pursuant to which they can submit documents and other proofs to the Claims Administrator documenting consequential losses (such as the cost of the Qualifying Repair itself, towing charges, rental charges, storage charges and hotel charges), up to a maximum of $10,000.  To be eligible to submit a claim under this tranche, a Class Member only needs to have experienced one Qualifying Repair on a Subject Vehicle.  (Shah Decl., ¶ 11.)

Further, in addition to being eligible for compensation as set forth above, a Settlement Class Member who currently owns or leases a Subject Vehicle which, as of the October 26, 2016 entry of the Preliminary Approval Order (ECF 56): (1) has had nine or more Qualifying Repairs (regardless of ownership); (2) has a mileage of at least 110,000 miles; and (3) has not had emissions recall C1008400 performed, can request that it be bought back by Defendant for fair market value.[8]  Fair market value of the cab and chassis will be determined based on the average

---

after-treatment system issues, as well as transmission issues in the Subject Vehicles during a single service visit. count as a single Qualifying Repair.

[7] These amounts are subject to a *pro rata* increase (or decrease) depending on the number of valid claims submitted.

[8] If a Settlement Class Member is leasing a Subject Vehicle that is otherwise eligible for the buyback, the Settlement Administrator will contact both the Settlement Class Member and

wholesale Black Book value on the Effective Date. Upfitted body components (*e.g.*, refrigerator boxes) will be compensated in an additional flat rate amount of $1,500.  Alternatively, Settlement Class Members who elect not to turn in upfitted body components will be compensated up to $1,500 for actual costs and labor associated with the removal or transfer of such upfitted body components from the Subject Vehicle to a different truck.  (Shah Decl., ¶13.)

Additionally, a Settlement Class Member who accepts a buyback amount may also claim a purchase credit (valid for a year from the date of issuance) for $2,000, $3,000, or $5,000, depending on the Class of Vehicle to be purchased (Class 3, Class 4, or Class 5 trucks, respectively).  The purchase credits can be applied toward the purchase of a new Mitsubishi-Fuso Canter truck, are being paid by Defendant separate and apart from the $17.5 million Settlement Fund and, thus, do not diminish the other relief available to Settlement Class Members.  (Shah Decl., ¶14.)

Throughout the negotiations, Class Counsel worked to ensure that the Class Notice was as effective as possible, engaging a professional settlement administrator, Kurtzman Carson Consultants, LLC ("KCC"), to provide direct notice to Class Members (including a separate notice for owners of fleets of Subject Vehicles).  The Settlement website, www.truckenginesettlement.com, contains electronic versions of the Claim Form that can be submitted online (but is not required to be submitted online), as well as important Court documents and answers to frequently asked questions.  Class Counsel also prepared and presented to the Court the Motion for Preliminary Approval and have spoken with, and continue to speak with, Settlement Class Members to answer their questions and assist them with their claim submissions.  (Shah Decl. ¶¶ 36-40.)

---

lienholder to facilitate discussion about whether an agreement can be reached to terminate the lease and turn in the Subject Vehicle, subject to the terms of the Settlement Agreement.

F.      **Class Counsel's Fee Request**

Subject to Court approval, Class Counsel seek an award of attorneys' fees of 25% of the Settlement Fund, or $4,375,000, plus reasonable expenses of $61,984.29.  Also subject to Court approval, Plaintiffs will seek service awards ranging from $15,000 to $30,000, in the aggregate amount of $90,000, for the five Class Representatives.[9]  (Shah Decl., ¶¶ 41, 55.)  Class Counsel's request is reasonable based on the benefits achieved for the Class and applicable legal principles. Like the Settlement itself, the Parties negotiated the fee amount under the auspices and with the assistance of Judge Infante and only after all other terms of the Settlement were agreed upon. (*See* Shah Decl. ¶ 43.)

III.    **CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED**

It is well-settled that plaintiffs' attorneys in a class action lawsuit may petition the court for compensation for any benefits to the class that result from the attorneys' efforts.  *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980).  Rule 23 expressly states that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement."  Fed. R. Civ. P. 23(h).  Further, the common-fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."  *Boeing*, 444 U.S. at 478.  Here, Defendant does not oppose the fee request.  (Shah Decl., ¶ 41.)  Thus, the only question for the Court is whether this amount is reasonable.

When considering an award of fees in a class case, the court should reward success.  *See, e.g., In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001); *In re Elec. Carbon Prod. AntiTrust Litig.,* 447 F. Supp. 2d

---

[9] Plaintiffs Q+Food, Legend Meats, Encore Piano, All American Moving, and West Lumber are the Class Representatives.

389, 405 (D.N.J. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

"[W]hat is important is that the district court evaluate what class counsel actually did and how it

benefitted the class." *AT&T*, 455 F.3d at 165-66.  *See also Hensley v Eckerhart*, 461 U.S. 424,

436 (1983) (the "most critical factor is the degree of success obtained"); *In re Ikon Office*

*Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[t]he most significant factor in

this case is the quality of representation, as measured by 'the quality of the result achieved, the

difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise

of the counsel, the skill and professionalism with which counsel prosecuted the case and the

performance and quality of opposing counsel'").

Federal courts at all levels encourage litigants to resolve fee issues by agreement

whenever possible.  As the United States Supreme Court explains, "[a] request for attorney's fees

should not result in a second major litigation.  Ideally, of course, litigants will settle the amount

of a fee." *Hensley*, 461 U.S. at 437; *see also Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714,

720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their

best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to

attorney's fees."); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819,

829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the

settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the

amount of the fee between themselves.").

Here, attorneys' fees were not negotiated or discussed until after agreement was reached

between the Parties on all other terms of the Settlement.  (Shah Decl., ¶ 43.)  The amount of

attorneys' fees was negotiated by sophisticated counsel familiar with complex and class action

litigation and was negotiated under the best of market conditions – an arm's-length negotiation –

a process which the courts have encouraged. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees). The virtue of a fee negotiated by the parties at arm's-length is that it is, essentially, a market-set price. MFTA has an interest in minimizing the fee; Class Counsel have an interest in maximizing the fee to compensate themselves (as the case law encourages) for their risk, innovation, and creativity; and the negotiations are informed by the Parties' knowledge of the work done and result achieved and their views on what the Court might award if the attorneys' fees award were litigated.

Because the fee arrangement in this case was negotiated by experienced counsel at arm's-length and with the assistance of an experienced mediator, judicial deference to the Parties' fee agreement is warranted. *In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (stating that the court should be reluctant to disturb agreed-upon attorneys' fees where class counsel negotiated the fee with sophisticated defense counsel who were familiar with the case, risks, amount and value of class counsel's time, and nature of the result obtained for class), *appeal dismissed for class member's lack of standing*, 33 F.3d 29 (9th Cir.1994), *superseding* 19 F.3d 470 (9th Cir. 1994); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); *In re Apple Computer, Inc. Deriv. Litig.*, No 06-4128, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement."); *Cohn v. Nelson*, 375 F. Supp. 2d. 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference."); *In re AXA Fin., Inc.*, No. 18268, 2002 WL 1283674, at *7 (Del. Ch. May 22, 2002) ("Where, as here, the fee is negotiated after the parties have reached an

agreement in principle on settlement terms and is paid in addition to the benefit to be realized by the class, this court will also give weight to the agreement reached by the parties in relation to fees.").

There are two methods to determine whether a fee award is appropriate.  The percentage-of-recovery method is used in cases, like this one, involving a common fund, because it rewards counsel for success and penalizes counsel for waste or failure.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).  The lodestar method is applied in statutory fee-shifting cases.  *Id.*; *Charles v. Goodyear Tire & Rubber Co.*, 976 F. Supp. 321, 323 (D.N.J. 1997).  Here, therefore, it is appropriate to judge the reasonableness of the requested fee award using the percentage of the fund method.  In fact, courts at all levels of the federal system, including the Supreme Court and at least nine Circuits (including the Third Circuit), have approved the use of the percentage method.  *See, e.g.*, *Boeing*, 444 U.S. at 478-79; *In re Gen. Motors Corp.*, 55 F.3d at 821.  Using that method reveals that the fee award request here is fair and reasonable and should be approved.  The Court may also conduct an optional cross-check, whereby it determines the lodestar multiple that would result from applying the percentage of the fund.  Such an analysis in this case results in a lodestar multiple of 3.1 (Shah Decl., ¶ 54), which is also reasonable under the applicable precedent and the facts of this case.

A.  **The Requested Fee Award is Reasonable Under the Percentage of the Fund Method and Consistent With Those in Common Fund Cases**

The value of the Settlement here is a Settlement Fund of $17.5 million cash, with no possibility that that amount reverts in any way to Defendant.[10]  In other words, if there are funds left over in the Settlement Fund, then the claiming Class Members' shares will increase on a *pro*

---

[10] Plaintiffs' attorneys' fees request does not take into account or seek to value the additional monies being paid by Defendant by way of the purchase credits, which payments are being made separate and apart from the $17.5 million Settlement Fund.

*rata* basis.  Pursuant to the terms of the Settlement Agreement, Class Counsel seek an award of attorneys' fees of 25% of the Settlement Fund, or $4,375,000, plus reasonable expenses in the sum of $61,984.29.  (Shah Decl., ¶ 41.)

When evaluating a requested fee award in a common fund class case, the primary factors to be considered are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*AT&T*, 455 F.3d at 165; *Cendant PRIDES*, 243 F.3d at 733; *Elec. Carbon*, 447 F. Supp. 2d at 405.  These factors, enunciated in *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000), frequently are referred to as the *Gunter* factors.  The Court may also consider:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement.

*AT&T*, 455 F.3d at 165; *Elec. Carbon*, 447 F. Supp. 2d at 405-06.  Because the facts of each case are different, the factors "need not be applied in a formulaic way" and some factors may be afforded greater weight than others.  *Rite Aid*, 396 F.3d at 301; *Gunter*, 223 F.3d at 195 n. 1.

The Third Circuit has not established a benchmark for fee awards in common fund cases, but has held that fee awards generally range from 19% to 45% of the settlement fund.  *In re Gen.Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*, 55 F.3d 768, 822 (3d Cir. 1995); *see also Ikon*, 194 F.R.D at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent"); *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 322-23 (D.N.J. 1998) ("There is no set standard, however, on how to determine

a reasonable percentage.  Awards utilizing the percentage-of-recovery method can reasonably range from nineteen percent to forty-five percent of a settlement fund . . .  [T]he percentage awarded, should, and generally does, increase commensurate with increased quality of representation.").  *See also* William Rubenstein, Alba Conte, Herbert B. Newberg, NEWBERG ON CLASS ACTIONS, §14.06 at 550 (4th ed. 2002) ("Usually 50 percent of the fund is the upper limit of a reasonable fee award from a common fund . . . .").

As a court in this District found recently, "[a]ttorneys' fees in the 30% range are not uncommonly awarded in the Third Circuit, and courts in this Circuit have awarded fees of more than 30%." *Mirakay v. Dakota Growers Pasta Co*., No. 13-CV-4429 JAP, 2014 WL 5358987, at *12 (D.N.J. Oct. 20, 2014), *appeal dismissed* (Dec. 11, 2014) (emphasis added) (approving a fee request that "would be approximately 36.8% of the mere cash value of the fund, and considering non-monetary, injunctive relief as well); *Bodnar v. Bank of America N.A*., No. 14-3224 (E.D. Pa., Aug 4, 2016) (ECF 90) (order awarding 33% of settlement fund of $27.5 million).

## 1.  The Size Of The Fund And Number Of Persons Benefitted, Supports The Requested Award

The first *Gunter* factor, the size of the fund created and the number of persons benefitted, plainly weighs in favor of approving the requested fee award.  The Manual for Complex Litigation provides that "[g]enerally, the factor given the greatest emphasis [in awarding a percentage of the recovery] is the size of the [recovery] created, because [the recovery] 'is itself the measure of success … [and] represents the benchmark from which a reasonable fee will be awarded.'"  Manual for Complex Litigation § 14.121 (4th ed. 2004) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 14:6, at 547, 550 (4th ed. 2002)).  As discussed above, the $17.5 million common fund will benefit Class members who purchased a total of approximately 10,000 Subject Vehicles (many Class members own multiple Subject

Vehicles).  Those Class Members who experienced no Qualifying Repairs are eligible to receive

$250, and those who had Qualifying Repairs, are eligible to receive between $2,000 and $10,000

for each Subject Vehicle, plus have the opportunity to have the Subject Vehicles bought back by

MFTA if they meet certain criteria set forth above.  Class Counsel negotiated a Settlement for

the Class, which is a certain, present return for the Class.  Given the inherent litigation risks in

this putative nationwide class action, the benefit is highly significant, as it provides tangible

benefits without the risks and delays of continued litigation.

### 2.   The Reaction Of The Class To The Settlement

The second *Gunter* factor analysis is the presence or absence of objections by members

of the Settlement Class to the terms of the Settlement.  Although the deadline for objecting is not

until January 26, 2017, to date, the reaction of the Class has been overwhelmingly favorable as

no Class Member has objected to, or opted out of, the Settlement.  Moreover, claims representing

several hundred trucks already have been received by KCC.  (Shah Decl., ¶ 15.)

### 3.   The Skill And Efficiency Of The Attorneys Involved Weighs In Favor Of The Requested Award

The third *Gunter* factor – the skill and efficiency of the attorneys involved – also weighs

in favor of the requested fees and expenses.  Class Counsel's success in bringing this Litigation

to a successful conclusion is perhaps the best indicator of the experience and ability of the

attorneys involved.  *In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 132 (D.N.J. 2002) ("the

single clearest factor reflecting the quality of the class counsels' services to the class are the

results obtained").  As noted above, Class Counsel developed and prevailed in a breach of

warranty and deceptive trade practices case where the Defendant already paid, pursuant to its

warranty, for many of the Class Members' repairs.  Class Counsel largely prevailed on the

motion to dismiss and won a difficult ruling about the scope of the warranty and scope of the

claims.  Employing their experience and skill, Class Counsel aggressively and swiftly worked to resolve this case in an efficient manner.  After obtaining extensive information and confirmatory discovery, Class Counsel were able to utilize their pre-existing and specialized knowledge of the legal and factual issues involved with defects in emissions and regeneration systems, (developed in connection with the *In re Caterpillar, Inc., C13 and C15 Engine Products Liability Litigation*, Master Docket No. 14-3722 (JBS) (JS), in which final approval of a settlement was recently granted).  Class Counsel were therefore able to efficiently assess the risks associated with this case and the potential damages at issue.  The quality of the work which has been presented to the Court, the undersigned believe, speaks for itself.  Facing the substantial risk of further litigation, Class Counsel's results are very beneficial for the Class.

The fact that a case settles as opposed to proceeding to trial "in and of itself, is never a factor that the district court should rely upon to reduce a fee award.  To utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases."  *Gunter*, 223 F 3d at 198.  Further, in achieving the Settlement before the Court, Class Counsel invested significant time and worked for over a year to bring this Settlement about.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Class Counsel.  *See, e.g., Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 941, 970 (E.D. Tex. 2000).  Defense counsel in this case were from two highly-respected national law firms, Squire Patton Boggs LLP, and Drinker, Biddle & Reath, LLP.  Furthermore, defense counsel have national reputations for successfully defending

automotive defect cases.  Class Counsel's ability to obtain such a favorable settlement for the Class in the face of a formidable opponent further confirms the high quality of Class Counsel's representation.

Accordingly, Class Counsel respectfully submit that the third *Gunter* factor, the skill and efficiency of the attorneys involved, strongly supports their application.

### 4. Without This Settlement, The Class Would Encounter Time-Consuming, Lengthy Litigation

As a complex commercial engine defect class action on behalf of Class Members from numerous states, the case did entail, and, absent Settlement, would continue to entail, hard-fought and lengthy litigation.  Formal class and merits discovery, as well as additional non-party discovery would be sought, requiring time-consuming review and analysis.  The case also would require continued extensive expert analysis and likely would shape up to be a battle of the experts, and thus, expert expenses would continue to grow.  As a putative class action, complex legal and factual issues would be the subject of additional pretrial motions, including for class certification.  Defendant would likely challenge all facets of the Rule 23 analysis, including advancing its arguments that there were no defects, and that it paid for many repairs under warranty.  The class certification decision likely would lead to the inevitable Rule 23(f) interlocutory appeal, potentially delaying prosecution of the case should a stay pending appeal be granted.  Given the prospect of protracted litigation, engendering enormous time and monetary expenditure, this factor weighs in favor of Plaintiffs' and Class Counsel's application.

### 5. Class Counsel Undertook The Risk Of Non-Payment

Class Counsel undertook this action on an entirely contingent fee basis, assuming a substantial risk that the Litigation would yield no, or very little, recovery and leave them uncompensated for their time, as well as for their out-of-pocket expenses.  (Shah Decl., ¶ 45.)

Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 747-49 (citing cases). As one court stated:

> Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

Throughout the Litigation, Defendant has maintained that there were no defects and no breach of any warranties. If this action had proceeded through litigation, this would have been a hotly contested issue. Defendant also asserted numerous legal defenses to Plaintiffs' claims. Moreover, Defendant would have certainly opposed certification of a class for litigation purposes in this case. These risks are highly relevant to the requested award because Class Counsel handled the case on a contingent fee basis, without any guarantee that they would be compensated for their extensive time investment, or reimbursed for their expenses. It is only because Class Counsel agreed to accept these risks that they were able to represent Plaintiffs and achieve a favorable substantial Class Settlement in this case. Accordingly, this factor also weighs in favor of the requested award.

### 6. Class Counsel Devoted Significant Time To This Case

The sixth *Gunter* factor also supports the requested award, as Class Counsel have invested significant time and effort in this Action. Specifically, since its inception, Class Counsel have expended nearly 2169.10 hours and incurred $1,413,417.20 in attorneys' fees and $61,984.29 in out-of-pocket expenses on this Litigation. (*See* Shah Decl., and attached Class Counsel's declarations.) This includes, *inter alia*: the time spent in the initial investigation of the

case; researching complex issues of law; preparing and filing the initial and amended complaints; meeting and conferring with Defendant's counsel at the start of the case pursuant to Rule 26(f), and assisting in preparing a Rule 26(f) Report to the Court; negotiating and entering into a protective order relating to the use of confidential documents and information produced by Defendant in this case; reviewing documents and warranty database information; briefing on a motion to dismiss and motion to strike; working with liability and damages experts; preparing a lengthy mediation statement and follow-up statements; attending four mediation sessions with Judge Infante and follow-up calls; hard-fought Settlement negotiations; confirmatory discovery; negotiating the details of a comprehensive Settlement Agreement; preparing the exhibits to the Settlement Agreement (including the Notice Claim Form (and proposed Preliminary Approval Order); preparing a motion for preliminary approval of the Settlement; regularly communicating with the Settlement Administrator to ensure a smooth Notice process following the Court's Preliminary Approval Order; reviewing the language and content of the Settlement website; reviewing and editing scripts for the automated telephone hotline; responding to Class Members who contacted Class Counsel directly or who were forwarded to Class Counsel by the Settlement Administrator; communicating with the named Plaintiffs throughout the litigation; and preparing the present motion.  (Shah Decl., ¶¶ 7-8, 16-40.)  In addition, Class Counsel will devote further time and effort to appearing at the Final Approval Hearing, responding to ongoing inquiries from Class Members going forward, and monitoring the distribution of Settlement payments by the Settlement Administrator.  These combined efforts amply support the requested award in this case, and demonstrate that the fees which will be paid to Class Counsel under the Settlement have been well earned.

## 7.   The Fee Is Well Within The Standard Range For Fees Approved In Common Fund Cases

Here, the Settlement provides for a $17.5 million common fund.  Class Counsel request a fee of 25 percent of this total, a percentage that falls well within established Third Circuit precedent and that is manifestly reasonable in light of the facts and circumstances of the case, including, among other things, the results achieved, the skill and quality of work, the contingent nature of the fee, and awards made in similar cases.  *See, e.g., In re Caterpillar, Inc., C13 and C15 Engine Products Liability Litigation*, Master Docket No. 14-3722 (JBS)(JS), MDL No. 2540 (D.N.J. September 20, 2016) (ECF 80) (awarding attorneys' fees of 33% in litigation involving alleged emission failures in diesel engines); *Hall v. AT&T Mobility LLC*, Civ No. 07-05325, 2010 WL 4053547, at *21 (D.N.J. Oct. 13, 2010) ("The requested fee of 33 1/3 % is also consistent with a privately negotiated contingent fee in the marketplace."); *In re Tricor Direct Purchaser Antitrust Litig.*, Civ. A. No. 05-340, slip op. at 9-10 (ECF No. 543) (D. Del. Apr. 23, 2009) (awarding one-third fee on settlement of $250 million); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 751 (E.D. Pa. 2013)  (awarding one-third fee on settlement of $150 million); *Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 3008808, at *17 (D.N.J. Nov. 9, 2005) (awarding one-third fee on settlement of $75 million); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (approving attorneys' fees equating approximately 33% of a $7.3 million settlement fund); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 512-19 (W.D. Pa. 2003) (approving a $25 million settlement and awarding $6.25 million in attorneys' fees, which was approximately 25% of the settlement); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d. 484, 495-98 (E.D. Pa. 2003) (approving a $7 million settlement and awarding attorneys' fees of $2.3 million, which was nearly 33%); *Computron*, 6 F. Supp. 2d at 323 (approving attorneys' fees equaling approximately 25% of a $15 million settlement); *In re*

*EquiMed, Inc. Sec. Litig.*, No. 98-cv-5374, 2003 WL 735099, at \*4  (E.D. Pa. Mar. 3, 2003) (awarding 33⅓%); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 439 (E.D. Pa. 2001) (awarding 33⅓%); *In re Safety Components*, *Inc. Securities Litigation*,166 F. Supp. 2d 72, 93, 107-108 (D.N.J. 2001) (awarding 33⅓%); *AremisSoft*, 210 F.R.D. at 134-35 (awarding 33⅓%); *In re Unisys Corp. Sec. Litig.*, No. 99-5333, 2001 WL 1563721, at \*3 (E.D. Pa. Dec. 6, 2001) (awarding 33⅓%); *Blackman v. O'Brien Envtl. Energy, Inc.*, No. Civ. A. 94-5686, 1999 WL 397389, at \*2 (E.D. Pa. May 2, 1999) (awarding 35%); *In re ValueVision Int'l Inc. Sec. Litig.*, 957 F. Supp. 699, 700-1 (E.D. Pa. 1997) (awarding 34.27%); *Ratner v. Bennett*, No. Civ. A. 92-4701, 1996 WL 243645, at \*9 (E.D. Pa. May 8, 1996) (awarding 35%); *In re Greenwich Pharm. Sec. Litig.*, Civ. A. No. 92-3071, 1995 WL 251293, at \*6 (E.D. Pa. Apr. 25, 1995) (awarding 33⅓%).  In sum, the *Gunter* factors plainly weigh in favor of granting Class Counsel's application for attorneys' fees.[11]

### B.   The Lodestar Cross-Check Supports That The Requested Fees And Expenses Are Fair And Reasonable

The Third Circuit recommends, but does not require, that district courts using the percentage of the fund method conduct a lodestar cross-check on the reasonableness of the fee

---

[11] In addition to the *Gunter* factors discussed above, courts in the Third Circuit may also consider the factors articulated in *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 340 (3rd Cir. 1998).  These factors are (1) whether the benefits accruing to the class are attributable to the efforts of class counsel or other groups, such as government agencies; (2) whether the fee is comparable to the fee that would have been negotiated had the case been subject to a contingent fee agreement; and (3) whether the settlement agreement contains innovative terms and conditions. 148 F.3d at 337-40.  These factors further support the requested award in this case.  With respect to the first *Prudential* factor, the results obtained are solely the result of Class Counsel's efforts.  Class Counsel are not aware of any other litigation against Defendant alleging the same or similar allegations.  (Shah Decl., ¶ 19.)  Further, as to the second factor, the requested award is in line with a typical contingent fee arrangement.  Finally, the third *Prudential* factor also supports the requested award, as the Settlement in this case provides excellent and unique relief for all owners and lessees of the Subject Vehicles.

award.  *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 183 n.4 (3d Cir. 2005) (affirming district court's percentage of the fund fee award, even though district court did not conduct lodestar cross-check); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 310 (E.D. Pa. 2003) (holding that *Gunter* recommends but does not require lodestar cross-check).  Where district courts do conduct a lodestar cross-check, the Third Circuit has cautioned that this cross-check "*does not trump the primary reliance* on the percentage of the common fund method."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 307 (emphasis added).  Moreover, the lodestar cross-check "need entail neither mathematical precision nor bean counting," and the "resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award."  *Id.* (emphasis added).  "The district courts may rely on summaries submitted by the attorneys and need not review actual billing records."  *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d at 306–07).  As one court emphasized, in determining the lodestar for cross-check purposes, the Court need not engage in a "full-blown lodestar inquiry."  *AT&T*, 455 F.3d at 169 n.6.  Indeed, where there have been no objections to the lodestar calculations, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources."  *Dewey v. Volkswagen of America*, 728 F. Supp. 2d 546, 592 (D.N.J. 2010).

To calculate the lodestar amount, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  Here, the lodestar method confirms the reasonableness of the percentage fee being sought.  As reflected in the accompanying Declaration and set forth above, Class Counsel have spent nearly 2169.10 hours on this case.  (*See* Shah Decl., ¶¶ 53-54 and Exhibits 1-5.)  Moreover, the lodestar amount does not include time to prepare for and attend the Final Fairness Hearing, and to continue to supervise the distribution of the Settlement fund

(including working with the Settlement Administrator, corresponding with Settlement Class Members, and working with opposing counsel, activities which will necessarily result in additional lodestar.  (*See id.*, ¶ 48.)

Moreover, the hourly rates vary appropriately between attorneys and between paralegals, depending on the position, experience level, and locale of the particular attorney.  (*See* Shah Decl., ¶ 49 and Exhibits 1-5.)  The rates for each individual attorney and paralegal are set forth in the declarations and in the charts and exhibits to the declarations.  The rates are based on a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided and the experience of the lawyer.  *Gunter*, 223 F.3d at 195.

Taking into account the several factors discussed above, including the economic benefits of the Settlement, the complexity and risk of the litigation, and the skill and experience of counsel, Class Counsel's rates are reasonable in this case.  As set forth in the accompanying Declarations, this calculation yields a lodestar based solely on the time for Class Counsel, before application of a reasonable multiplier, of $1,413,417.20.  This results in a multiplier of 3.1.

In the Third Circuit, multipliers are used to account for the risks of non-recovery, as an incentive for counsel to undertake socially beneficial litigation, or as an award for an extraordinary result.  "By nature they are discretionary and not susceptible to objective calculation."  *Prudential II,* 148 F.3d at 340.  The court in *Prudential II*, 148 F.3d at 341, also found that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."  *Accord In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 341-42 (D.N.J. 2002); *Rowe v. E.I. DuPont de Nemours and Co.,* Civ. Nos. 06-1810 (RMB/AMD), 2011 WL 3837106, at *22 (D.N.J. Aug. 26, 2011).  In *Cendant PRIDES*, the Third Circuit approved a lodestar multiplier of 2.99 in a case it described as "relatively simple in

terms of proof" in which "discovery was virtually nonexistent." *Cendant PRIDES*, 243 F.3d at 735-36.  *See also Milliron v. T-Mobile USA, Inc*., 423 F. App'x. 131, 135 (3d Cir. 2011) (2.21 multiplier); *In re Merck & Co., Inc. Vytorin Erisa Litig*, 2010 WL 547613, at \*13 (D.N.J. Feb. 9, 2010) (2.786 multiplier); *McCoy v. Health Net, Inc*., 569 F. Supp. 2d 448, 479 (D.N.J. 2008) (2.3 multiplier); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 256 (D.N.J. 2005) (2.83 multiplier); *In re Remeron End-Payor Antitrust Litig.*, Civ. 02-2007 FSH, 2005 WL 2230314, at \*31 (D.N.J. Sept. 13, 2005) (multiplier of 1.73 was "on the low end of the spectrum") (citing cases).  Accordingly, the lodestar cross-check supports Class Counsel's request.

Other courts, too, have found multipliers higher than the multiplier suggested here to be reasonable for cross-check purposes in other class actions.  *See*, *e.g.*, *Weiss v. Mercedes-Benz of North America, Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee that resulted in a multiplier of 9.3 times hourly rate); *Muchnick v. First Fed. Savings & Loan Ass'n*, No. 86-1104, 1986 WL 10791 (E.D. Pa. Sept. 29, 1986) (awarding fee equal to multiplier of 8.4); *Perera v. Chiron Corp.*, Civil No. 95-20725-SW (N.D. Cal. Feb. 17, 1999 and Feb. 29, 2000) (multiplier of 9.14); *In re Buspirone Antitrust Litig.*, MDL Docket No. 1413 (JGK), 2003 U.S. Dist. LEXIS 26538, at \*1 (S.D.N.Y. Apr. 11, 2003) (multiplier of 8.46); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (awarding fee equal to a multiplier of 8.84); *In re Triangle Indus. S'holder's Litig.*, Civil Action No. 10,466, 1991 Del. Ch. LEXIS 203, at \*1 (Del. Ch. Dec. 19, 1991) (awarding fee equal to 6.6 multiple on $70 million recovery); *In re RJR Nabisco Sec. Litig.*, M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at \*1 (S.D.N.Y. Aug. 24, 1992) (multiplier of 6.0); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (multiplier of 5.5); *Feerer v. Amoco Prod. Co.*, Civ. No. 95-0012 JC/WWD, 1998 U.S. Dist. LEXIS 22248,

at *1 (D.N.M. May 28, 1998) (multiplier of 4-5); *Maley v. Del Global Techs. Corp.*, 186 F.

Supp. 2d 358 (S.D.N.Y. 2002) (multiplier of 4.65); *Willson v. N.Y. Life Ins. Co.*, 1995 N.Y.

Misc. LEXIS 652 (N. Y. Sup. Ct. Nov. 8, 1995) (multiplier of 4.6); *In re Boston & Maine Corp.*,

778 F.2d 890, 894 (1st Cir. 1985) (multiplier of 6); *Bodnar v. Bank of America N.A.*, No. 14-

3224 (E.D. Pa., Aug 4, 2016) (ECF 90) (order awarding 33% of settlement fund of $27.5 million,

which was a 4.69 multiplier); *see also* 1 Alba Conte, Attorney Fee Awards, §2.06 at 39 N. 90 (2d

ed. 1993) ("When a large common fund has been recovered and the hours are relatively small,

some courts reach a reasonable fee determination based on large multiples of five or ten times

the [lodestar].") (citing, *inter alia*, *Wilson v. Bank of Am. Nat'l Trust & Savs. Ass'n*, No. 643872

(Cal. Super. Ct. Aug. 16, 1992) (awarding fee multiples of up to ten times hourly rates)).

The multiplier in this case reflects the fact that Class Counsel were highly efficient in

litigating and resolving this potentially drawn-out Litigation.  That is why the percentage of the

fund approach is the key measure—so that Class Counsel is incentivized to obtain excellent

results efficiently, not to run up a big bill with meager results.  As the Third Circuit stated in

*Gunter*, one purpose of the percentage of the fund approach is "to encourage early settlements by

not punishing efficient counsel . . ."  *Gunter*, 223 F.3d at 198 (quoting Manual for Complex

Litigation, § 24.121, at 207).  Applying this principle, the Third Circuit held that "[p]rocuring a

settlement, in and of itself, is never a factor that the district court should rely upon to reduce a fee

award."  (*Id.*)  Moreover, "[t]o utilize such a factor would penalize efficient counsel, encourage

costly litigation, and potentially discourage able lawyers from taking such cases."  (*Id.*)

Accordingly, the lodestar cross-check, should the Court choose to engage in such an exercise,

supports Class Counsel's request and should be approved.

C.    **Class Counsel Should Be Reimbursed for Their Reasonably Incurred Litigation Expenses**

Litigation expenses are properly recovered if they are adequately documented and reasonable in nature.  *Safety Components, Inc.*, 166 F. Supp. 2d at 108 ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.") (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).  Courts have generally approved expenses arising from photocopying, use of the telephone and fax, postage, witness and deposition fees, and hiring of consultants.  *Abrams*, 50 F.3d at 1225; *Cullen*, 197 F.R.D. at 151.  Here, Class Counsel incurred expenses in the amount of $ 61,984.29, which includes fees and costs relating to mediation, court reporters, travel, photocopying, phone, fax, postage and legal research.  (*See* Shah Decl., ¶¶ 50-54, and Exhibits 2-5.) These expenses are reasonable and should be awarded.  *See, e.g., In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 n.12 (3d Cir. 2001) (quoting the 1985 Task Force Report for the conclusion that the "common-fund doctrine . . . allows a person who maintains a lawsuit that results in the creation, preservation, or increase of a fund in which others have a common interest, to be reimbursed from that fund for litigation expenses incurred"); *see also In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 172 n.8 (3d Cir. 2006) ("[e]xpenses are generally considered and reimbursed separately from attorneys' fees"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 263 (D. Del. 2002) (approving costs and expenses reimbursements out of litigation fund as reasonable).

IV.    **THE SERVICE AWARDS SHOULD BE APPROVED**

Service awards for class representatives promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  The efforts of the Class Representatives were instrumental in achieving the Settlement on behalf of the Class and

justify the awards requested here.  The Class Representatives came forward to prosecute this Litigation for the benefit of the Class as a whole.  They sought successfully to remedy a widespread wrong and have conferred valuable benefits upon their fellow Class Members.  The Class Representatives provided a valuable service to the Class by: (a) providing information and input in connection with the drafting of the original and subsequent complaint; (b) maintaining and storing their Subject vehicles and making them available for inspections; (c) searching for and producing voluminous documents; (d) overseeing the prosecution of the Litigation; (e) consulting with Class Counsel; and (f) offering advice and direction at critical junctures, including the Settlement of the litigation.

The initial Plaintiff and Class Representative, Joyelle Fleites, of Q+Food, helped to compile information regarding the litigation, personally attended two mediations in California, on November 22, 2015 and May 31, 2016, at her own expense, and was available during the course of the other two mediation sessions by phone and further communicated with Class Counsel.  Further, Q+Food could not use, but continued to pay for and retain, its Subject Vehicle as evidence and for any inspection, at considerable cost.  (*See* Shah Decl., Exhibit 6, Declaration of Joyelle Fleites.)  Thus, the requested service awards of $30,000 for Q+Food for the time and expenses in assisting counsel with this litigation and $15,000 each for the remaining four Class Representatives in recognition of their similar services to the Class are reasonable and should be approved.  (*See* Shah Decl., Exhibit 7, Declaration of Legend Meats; Exhibit 8, Declaration of Encore Piano; Exhibit 9, Declaration of All American Moving; and Exhibit 10, Declaration of West Lumber.)  These awards are warranted under the circumstances, and well in line with awards approved by federal courts in New Jersey and elsewhere.  *See, e.g.*, *In re Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation*, Master Docket

No. 14-3722 (JBS)(JS), MDL No. 2540 (D.N.J., September 20, 2016) (ECF 80) ($20,000 incentive awards in litigation involving alleged emission failures in diesel engines); *In re Residential Doors Antitrust Litig.*, Civ A. Nos. 94-3744, 96-2125, MDL 1039, 1998 WL 151804, at *9 (E.D. Pa. Apr. 2, 1998) (approving awards of $10,000 each to four class representatives); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *19  (E.D. Pa. June 2, 2004) (approving awards of $25,000 for each of five class representatives); and *Mayer v. Driver Solutions, Inc.*, Civ. A. No. 10-1939, 2012 WL 3578856, at *5 (E.D. Pa. Aug. 17, 2012) (approving $15,000 service award for class representative);  *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. 2009) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation.") (quoting *Cullen*, 197 F.R.D. at 145); *McGee v Continental Tire North America*, 2009 WL 539893 at *18 (E.D. Pa. Mar. 4, 2009)(quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002)) ("Incentive awards are 'not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class.' ").

## IV.     CONCLUSION

        For all of the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court approve the requested attorneys' fee and reimbursement of expense award and service awards to Plaintiffs.

Dated:  January 12, 2017                SHEPHERD, FINKELMAN, MILLER
                                        & SHAH, LLP


                                By:_____*s/James C. Shah*_____
                                        James C. Shah
                                        Natalie Finkelman Bennett
                                        475 White Horse Pike

Collingswood, NJ 08107
(856) 858-1770
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

Michael D. Donovan
DONOVAN LITIGATION GROUP LLC
1055 Westlakes Drive, Suite 155
Berwyn, PA  19312
Tel: (610) 647-6067
Fax: (610) 647-7215
E-mail:  mdonovan@donovanaxler.com

Robert W. Murphy
ROBERT W. MURPHY
1212 S.E. 2nd Avenue
Fort Lauderdale, FL  33316
Tel: (954) 763-8660
Fax: (954) 763-8607
E-Mail:  rwmurphy@lawfirmmurphy.com

Marc A. Goldich
AXLER GOLDICH LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
P: 267.534.7400
F: 267.534.7407
E-mail: mgoldich@axgolaw.com

*Attorneys for Plaintiffs and the Class*