UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Q+ FOOD, LLC, LAWRENCE BARTON d/b/a LEGEND MEATS, LLC; ENCORE PIANO & ORGAN MOVING, LLC; ALL AMERICAN MOVING AND STORAGE DELIVERY, LLC, and WEST LUMBER & BUILDING SUPPLY CORP; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MITSUBISHI FUSO TRUCK OF AMERICA, INC.,<br><br>Defendant. | Civ. No. 14-cv-06046-MAS-DEA<br><br>*Document electronically filed.* |

## DECLARATION OF JAMES C. SHAH

I, James C. Shah, hereby state as follows:

1. I am a partner at the law firm of Shepherd, Finkelman, Miller & Shah, LLP ("SFMS"). I am admitted to practice in California, New Jersey, New York, Pennsylvania and Wisconsin, as well as multiple circuit and federal courts. I have personal knowledge of the matters discussed herein, and, if called as a witness, could testify competently thereto. SFMS was appointed as Lead Class Counsel along with Donovan Litigation Group, LLC, Murphy Law Firm, and Axler Goldich, LLC, by this Court in its October 26, 2016 Order (ECF 56, ¶5) preliminarily approving the proposed settlement of this litigation[1] (the "Settlement").

2. Since its inception, I have actively participated in all aspects of this Litigation, including, but not limited to: (1) case investigation; (2) drafting of the pleadings; (3) discovery; (4) case strategy; (5) court appearances; (6) communications with Plaintiffs and Class Members;

---

[1] Unless otherwise noted, all capitalized terms herein shall have the same meaning as in the Settlement Agreement ("Settlement Agreement").

(7) communications with defense counsel; and (8) negotiation of the Settlement.  Thus, I am fully familiar with the proceedings.  If called upon, I am competent to testify that the following facts are true and correct to the best of my knowledge, information, and belief.

3. I am submitting this declaration in support of the Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Service Awards.

4. As set forth below, through the diligent prosecution of this case by Plaintiffs, the Parties reached a Settlement with Defendant, Mitsubishi Fuso Truck of America, Inc. ("MFTA" or "Defendant").  Class Counsel respectfully submit that the Settlement is fair, reasonable, adequate, and in the best interests of all Class Members, and therefore should be approved by the Court.

5. I believe that Plaintiffs achieved an excellent result in the Settlement.  A broad and complex range of both legal and factual issues was presented during the course of prosecuting this Litigation.  We analyzed these issues and concluded that, while the Litigation possessed merit, there were risks involved with proving Defendant's liability and ultimately prevailing in the Litigation.

6. This declaration generally summarizes the work performed by SFMS (together with Donovan Litigation Group, LLC, Murphy Law Firm, and Axler Goldich, LLC, ("Class Counsel" or "Lead Class Counsel"), for Plaintiffs in this Litigation.  As demonstrated below, Class Counsel has worked diligently to perform and coordinate all manner of tasks related to this matter at each phase of the Litigation, including initial case investigation, filing of the initial and subsequent complaints, motion practice, discovery, settlement negotiations, motions for Settlement approval and assistance with Settlement administration for the Class Members.

7. Class Counsel and the other law firms have dedicated significant time and resources to litigating this case on behalf of the Settlement Class. The firms' legal services were performed on a wholly contingent fee basis. Therefore, Class Counsel and other Plaintiffs' counsel have assumed the risk of non-payment in litigating and prosecuting this action and have, at all times, ensured that sufficient resources were made available.

8. Among other things, to achieve this Settlement, Co-Lead Counsel took the following litigation actions: (a) conducted an extensive pre-suit factual and legal investigation that laid the groundwork for the complaints; (b) drafted the complaints and worked with the Plaintiffs to develop the asserted legal claims; (c) researched and drafted oppositions to the various motions to dismiss and motions to strike filed by Defendant; (d) conducted Rule 26(f) conferences, exchanged initial disclosures with defense counsel and filed a joint discovery plan with the Court; (e) attended initial status conference and follow-up conferences; (f) reviewed and analyzed Plaintiffs' documents; (g) reviewed and analyzed documents produced by Defendant; (h) consulted with experts and analyzed the information underlying the claims made about the vehicles at issue; (i) participated in lengthy arm's-length Settlement negotiation conferences and telephone conferences with defense counsel and a respected mediator; (j) drafted and negotiated the Settlement Agreement with defense counsel, as well as the ancillary notice documents and Notice Plan and proposed orders; (k) interviewed, engaged and worked with the Settlement Administrator in connection with the effectuation of the Settlement; (l) drafted the briefing for preliminary approval of the Settlement; (m) fielded telephone calls and other inquiries from Settlement Class Members concerning the Settlement; and (n) monitored (and will continue to monitor) the Claims Administrator to assure that the Notice Plan and claims administration

process are being implemented properly. During the Litigation, each attorney or paralegal was careful to minimize or avoid the duplication of any work.

**SETTLEMENT BENEFITS**

9. As set forth herein, Plaintiffs' diligent prosecution of this case led to a significant Settlement with Defendant, which provides a $17,500,000, non-reversionary fund from which Settlement Class Members can seek relief.

10. The Agreement provides for a release of Settlement Class Members' claims in exchange for a substantial cash payment and outlines separate tranches of relief which are available to Class Members depending upon, *inter alia*, the number of valid Qualifying Repairs the particular Class Member experienced for each Subject Vehicle he, she or it owned or leased. "Qualifying Repair" means a repair or replacement outside of the regular service intervals, performed on or before October 26, 2016, relating to emissions-related engine and after-treatment system issues, as well as transmission issues in the Subject Vehicles. According to the Settlement:

   a. Class Members who experienced no Qualifying Repairs are eligible to receive $250 for each Subject Vehicle, subject to *pro rata* adjustment.

   b. Class Members who experienced one to three Qualifying Repairs are eligible to receive $2,000 per Subject Vehicle, subject to *pro rata* adjustment.

   c. Class Members who experienced four to six Qualifying Repairs are eligible to receive $4,000 per Subject Vehicle, subject to *pro rata* adjustment; and

   d. Class Members who experienced seven or more Qualifying Repairs are eligible to receive $6,000 per Subject Vehicle, subject to *pro rata* adjustment.

11. Instead of choosing relief based on the number of Qualifying Repairs, Class Members may instead choose the optional prove-up category, under which they can submit documents and other proofs to the Claims Administrator documenting consequential losses (such as the cost of the Qualifying Repair itself, towing charges, rental charges, storage charges and hotel charges), up to a maximum of $10,000 experienced by the Class Member as a consequence of the Qualifying Repairs of a Subject Vehicle.

12. These amounts will be subject to *pro rata* adjustment upwards or downwards depending upon the amount of total claims.

13. Further, in addition to seeking a payment as set forth above, a Settlement Class Member who currently owns or leases a Subject Vehicle which, as of the October 26, 2016 entry of the Preliminary Approval Order: (1) has had nine or more Qualifying Repairs (regardless of ownership); (2) has a mileage of at least 110,000 miles; and (3) has not had emissions recall C1008400 performed, can request that it be bought back by Defendant for fair market value. Fair market value of the cab and chassis will be determined based on the average wholesale Black Book value on the Effective Date.  Upfitted body components (*e.g.*, refrigerator boxes) will be compensated at a flat rate of $1,500 or the Settlement Class Member may elect to not turn in the upfitted body components and will be compensated actual costs, of up to $1,500, for the costs and labor associated with the removal or transfer of such upfitted body components from the Subject Vehicle to a different truck.

14. Separate and apart from the Settlement, a Settlement Class Member who accepts a buyback amount may also claim a purchase credit (valid for a year from the date of issuance) for $2,000, $3,000, or $5,000 dollars, depending on the Class of Vehicle to be purchased (Class 3,

5

Class 4, or Class 5 trucks, respectively), for the purchase of a new Mitsubishi-Fuso Canter truck, which amount will be funded in full by Defendant, but will not come from the Settlement Fund.

15. As of January 6, 2017, there were 242 claims submitted covering 460 Subject Vehicles.

**OVERVIEW OF THE LITIGATION**

16. These firms have performed a great deal of work investigating the facts underlying the litigation and have otherwise prepared these cases for a putative class action; and they have negotiated and executed the Agreement.

17. As part of our pre-suit investigation, we investigated the EPA regulations and service histories of the Subject Vehicles, as well as potential claims that we believed could be asserted in connection with sale and warranting of the Subject Vehicles.

18. I assisted with the development of the legal theories asserted by Plaintiffs.

19. This action was commenced by Q+Food on September 29, 2014. (ECF 1.) Prior to initiating the action, Class Counsel spent considerable time investigating the issues, including the Subject Vehicle emission and transmission failures and repair issues, with Q+Food and a number of other potential Settlement Class Members, as well as investigating the scope of the problems with the Subject Vehicles. Counsel was not aware of any other litigation against Defendant alleging the same or similar allegations.

20. In addition, Class Counsel researched the various laws potentially applicable to the claims, including applicable state law.

21. Subsequent to the commencement of the action, Class Counsel spent considerable time investigating the claims of Plaintiffs Lawrence Barton d/b/a Legend Meats, LLC ("Legend Meats"); Encore Piano & Organ Moving, LLC ("Encore"), All American Moving and Storage

6

Delivery, LLC ("All American Delivery"); and West Lumber & Building Supply Corp. ("West Lumber"), and researching the various laws applicable to those claims, including, but not limited to, Ohio, California, New Jersey, and Pennsylvania law.

22.     Defendant filed a Motion to Dismiss the initial Complaint and Motion to Strike Class Allegations on December 8, 2014. (ECF 21, 22.)

23.     The parties met and conferred and submitted a Proposed Joint Discovery Plan and thereafter, on January 5, 2015, exchanged Initial Disclosures.

24.     The parties attended an Initial Conference on January 6, 2015 before this Court.

25.     The parties negotiated and entered a confidentiality agreement.

26.     Following extensive briefing, the Court entered an Opinion on July 30, 2015 (ECF 31), denying the Motion to Strike Class Allegations and granting, in part, the Motion to Dismiss.

27.     Thereafter, the parties agreed to utilize the services of the Honorable Edward A. Infante (Ret.), a well-respected neutral with JAMS.  The parties participated in four in-person mediation sessions with Judge Infante between November 2015 and June 2016.  Both during and after that time frame, the parties also exchanged additional information and engaged in telephonic negotiations with Judge Infante.

28.     In connection with these mediation sessions, the Parties submitted detailed mediation briefs to Judge Infante, setting forth their respective views on the strengths of their cases, and during the mediation sessions, the Parties discussed their relative views of the law and the facts and potential relief for the proposed Class.  Once an agreement in principle was reached, the Parties exchanged proposals and counterproposals on several aspects of the

settlement, including but not limited to Class Member eligibility, the buyback options and notice to the Class.

29. Plaintiffs filed their Amended Class Action Complaint ("Amended Complaint") on October 19, 2016. (ECF 49.)

30. The Amended Complaint alleges that the Subject Vehicles contain emissions and transmission system defects and fail to operate under all conditions and all applications on a consistent and reliable basis even after repeated emission and transmission warranty repairs and replacements. Plaintiffs allege the emissions technology has resulted in the repeated failure of the Diesel Exhaust Fluid ("DEF") handlers, the fuel injectors, the crank case pressure sensors and breather, the catalytic converter muffler, the DEF tank internal sensor, the engine protection system, the EEC programming, as well as a lack of power that have caused the Subject Vehicles to stall or not restart.

31. Plaintiffs consulted with experts and were in the process of determining the engine, economics, industry and statistical experts to engage.

32. Plaintiffs' alleged damages included lost income, diminished value of the Subject Vehicles, out-of-pocket costs such as out of warranty repairs, towing costs, vehicle rental costs, storage costs, and related hotel/taxi charges.

33. MFTA has always denied and continues to deny that the Subject Vehicles are defective or that it violated any laws or warranties, and disputes all of Plaintiffs' material allegations.

34. The Settlement was achieved only after considerable investigation, careful consideration, and the exchange and analysis of information and thousands of pages of documents. Class Counsel insisted that MFTA provide them with discovery that would permit

them to conclude that any resolution was fair, adequate and reasonable. This discovery included, *inter alia*, documents and data confirming the total number of Subject Vehicles, warranty repair data demonstrating the scope and magnitude of the repairs performed on the Subject Vehicles and the database of warranty repairs. Class Counsel also interviewed a person most knowledgeable at MFTA about recalls and service actions and nature of the servicing of the Subject Vehicles, and reviewed information about the recall involving the emissions systems (emissions recall C1008400), as well as the safety recalls and service actions on the transmission issues.

35. At all times, the months' long negotiations and extensive efforts, which ultimately resulted in the Settlement being presented to this Court, were adversarial, non-collusive, and at arm's length.

36. Through a competitive bidding process in which the parties solicited bids from different vendors, the parties selected Kurtzman Carson Consultants, LLC ("KCC") as Settlement Administrator to facilitate issuance of notice (and ultimately administer the claims).

37. Class Counsel worked with the claims administrator to prepare the notice documents and facilitate the Notice.

38. Class Counsel prepared and presented to the Court the Motion for Preliminary Approval, which was entered on October 26, 2016.

39. The publication notice and Settlement website, www.truckenginesettlement.com, contains electronic versions of the Claim Form that can be submitted online, important Court documents, and answers to frequently asked questions.

40. Class Counsel have spoken with Settlement Class Members to answer their questions, and will continue to do so. The comments from Class Members have been positive concerning the Settlement.

## **THE REQUESTED FEE SHOULD BE APPROVED**

41. Class Counsel seek, and Defendant does not oppose, a total award of attorneys' fees and expenses of $4,375,000 or 25% of the Settlement Fund and expenses of $61,984.29.

42. The amount of fee requested is consistent with Plaintiffs' fee agreements with Class Counsel.  Thus, Class Counsel's interests are aligned with the interests of the Settlement Class to obtain the best settlement possible.

43. Like the Settlement itself, the Parties negotiated the fee amount under the auspices and with the assistance of Judge Infante.  Further, attorneys' fees were not negotiated or discussed until after agreement was reached between the parties on all other terms of the Settlement.

44. Had the Litigation not settled, the classes faced numerous risks to obtaining judgments or any relief.  The risks of non-payment included the merits of the claims, the challenge of certifying four litigation classes, and the risk of a defense verdict at trial or a reversal of a favorable outcome on appeal.

45. Class Counsel undertook this action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no, or very little, recovery and leave them uncompensated for their time as well as for their out-of-pocket expenses.

46. As attorneys' fees, Class Counsel is requesting that this Court award fees of 25% of the Settlement Fund or $4,375,000.  In light of the results achieved for the Settlement Class, the efforts of Lead Class Counsel, and the risk of non-recovery, a 25% fee is very reasonable.

10

The fee is in line with the percentage routinely awarded by courts in class action settlements today, including awards of one-third or greater to SFMS. *See generally In re: Caterpillar, Inc., C13 and C15 Engine Products Liability Litigation*, Master Docket No. 14-3722 (JBS)(JS) (D.N.J.) (awarding 33% or common fund).

47.     SFMS maintained detailed time records regarding the work performed in connection with the prosecution of the Litigation.  Attached hereto as Exhibit "1" is a time and expense summary chart relating to the Litigation.  This chart was completed by SFMS based upon the records created by the Firm during the pendency of this Litigation.

48.     The total number of hours spent by the attorneys, paralegals and law clerks working on behalf of SFMS in the Litigation is 954.90.  As reflected in Exhibit "1," through January 10, 2017, SFMS has accumulated a lodestar totaling $633,850.20.  This does not include the hours necessary for briefing of the Plaintiffs' request for final approval of the Settlement and additional time working with the Settlement Class and Claims Administrator.

49.     SFMS's hourly rates range from $195 for certain paralegal work, to up $775 for senior, experienced litigation counsel.  Based on my knowledge and experience, the hourly rates charged by SFMS are well within the range of market rates charged by attorneys of equivalent experience, skill, and expertise.  The hourly rates are the same rates which SFMS utilizes in non-contingent matters and are rates that have routinely been approved by courts throughout the United States.  *See, e.g., Henderson v. Volvo Cars of North America, LLC*, 2013 WL 1192479 (D.N.J. March 22, 2013); *Trewin v. Church and Dwight, Inc*., Case No. 3:12-cv-01475-MAS-DEA (D.N.J. 2015) [Dkt. 68]; *In re: Ford Motor Co. Spark Plug and 3-Valve Engine Products Liability Litigation*, Case No. 1:12-md-02316-BYP (N.D. Oh. 2016) [Dkt. 122]; *Corson v. Toyota Motor Sales U.S.A., Inc*., Case No. 1:12-cv-8499-JGB (C.D. Ca. 2016) [Dkt. 107];

*Allison Gay v. Tom's of Maine, Inc.*, Case No. 0:14-cv-60604-KMM (S.D. Fl. 2016) [Dkt. 43]; *Golden Star, Inc. v. Mass Mut. Life Ins. Co.*, Case No. 3:11-30235-MGM (D. Mass. 2015) [Dtk. 55]; and *Butler National Corp. v. The Union Central Life Insurance Co.*, Case No. 1-1:12-cv-00177-SJD-KLL (S.D. Oh. 2014) [Dkt. 55].

50. SFMS, to date, has also expended a total of $47,316.05 in unreimbursed expenses in connection with the prosecution of the Litigation. These expenses, as reflected on Exhibit "2," consist of assessments that were used to pay the mediation costs, as well as other expenses, including court filings and process fees, investigative fees, copying costs, postage and facsimile charges, transportation and travel expenses, telephone charges, and computer and research charges.

51. These expenses are reflected in the books and records of SFMS and have been prepared from expense vouchers, receipts, statements and other records and are a true and accurate summary of the expenses incurred in the Litigation. The expenses for which reimbursement is sought all were necessarily incurred and are reasonable in amount.

52. Attached hereto as Exhibits 3 through 5 are Declarations of Donovan Litigation Group, LLC (Exhibit 3), Murphy Law Firm (Exhibit 4), and Axler Goldich, LLC (Exhibit 5). These declarations and accompanying charts were completed by the firms based upon the records they created during the pendency of this Litigation as described above.

53. The total hours expended by the Class Counsel during the years that this litigation has been pending is 2169.10.

54. As reflected in Exhibits 1 through 5, Class Counsel have accumulated a lodestar totaling $1,413,417.20 and incurred $61,984.29 in total expenses. Thus, Class Counsel is seeking a multiplier of 3.1%.

55. Lead Class Counsel also requests that the Court approve a $30,000 service award for Plaintiff Q+Foods and a $15,000 service award for each of the other four Plaintiffs. Their participation was essential to obtaining the recovery on behalf of the Settlement Class, and included working with Class Counsel to investigate the case, reviewing and commenting on the complaints, and searching for and providing documents. See Exhibits 6-10 (Class Representative Declarations).[2] The Class Representatives were kept abreast of the proceedings throughout the litigation and Settlement, and reviewed and approved of the proposed Settlement. Moreover, the amount requested here, has been approved by courts in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed at Collingswood, New Jersey, this 12th day of January, 2017.

*s/James C. Shah*
James C. Shah

---

[2] Exhibit 6, Declaration of Joelle Fleites; Exhibit 7, Declaration of Legend Meats; Exhibit 8, Declaration of Encore Piano; Exhibit 9, Declaration of All American Moving; and Exhibit 10, Declaration of West Lumber.